[No. 36608.     En Banc.     October 10, 1963.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM JAMES, *Appellant.**

*Reported in 385 P. (2d) 558.

*William L. Bennett* and *Donald Olson,* for appellant.

*John J. Lally* and *George A. Kain,* for respondent.

WEAVER, J.—March 14, 1962, an information was filed charging defendant-appellant, William James, and Richard Topper with the crimes of (1) first-degree murder, (2) robbery, and (3) grand larceny.

April 2, 1962, Richard Topper pleaded guilty to count III of the information—grand larceny—and was sentenced to the penitentiary for a term of not more than 15 years.

April 9, 1962, an amended information containing the same three counts was filed against both defendants.

During trial, defendant Topper was discharged from counts I and II. The jury found defendant James guilty on all three counts and inflicted the death penalty.

It is not necessary to set forth the facts of the alleged crimes.

We discuss only two categories of the defendant's assignments of error: (1) those we deem sufficiently meritorious to warrant a reversal of the judgment and sentence; and (2) those raising questions of law that, in all probability, will be presented to the trial court on a retrial of defendant James.

Defendant James did not take the stand. His codefendant Topper was the key witness for the state. They were represented by different counsel.

Topper's plea of guilty to grand larceny planted a suspicion in the mind of James's counsel that Topper had arranged with the prosecuting attorney to plead guilty to grand larceny and to testify on behalf of the state; in return, counts I and II against him were to be dismissed.

This suspicion became a possibility when the state failed to deny the allegation in affidavits filed in opposition to pretrial motions by James to interview Topper, to examine evidence in possession of the prosecuting attorney, and to strike Topper's name from the amended information. The motions were denied.

During early stages of the trial, the possibility that Topper would testify for the state became a probability. On examination of the first prospective juror, Topper's counsel stated:

". . . I would like to explain at this time that it is *contemplated* that the defendant, Richard Topper, whom I represent, . . . will be a witness for the prosecution." (Italics ours.)

On various occasions, the prosecuting attorney, while examining prospective jurors, alluded to the possibility that Topper might be dismissed from the trial. For example, he stated:

"If it should transpire . . . that Mr. Topper is dismissed from the murder and the robbery counts, having plead guilty to hauling this money away, you understand that that is a decision and an act, a judicial act that Judge Evans considers and acts upon based upon a full disclosure of all the circumstances. *Some of those facts may come into evidence before you as jurors and some of them may not be admissible,* but do you understand that that is a judicial act that the court performs, that it is not some legal flim-flam, or arbitrary act to be performed by the prosecuting attorney . . ." (Italics ours.)

(Parenthetically, the prosecuting attorney should not have informed the jury that the court might consider matters not admissible in evidence. This reference, as disclosed by the record, is to the file of the prosecuting attorney and to certain lie detector tests that might have been given.)

Further, in selecting the jury, Topper's counsel claimed no right to exercise preemptory challenges. On motion of James's counsel, the court permitted him to exercise 12 challenges.

Finally, in his opening statement, the prosecuting attorney said:

". . . it seems that Richard Topper will take this stand and tell you himself all the things that he did, as well as all the things that he knows that James did."

After 13 witnesses had testified for the state, the suspicion became a certainty; in the absence of the jury the prosecuting attorney moved that defendant Topper be discharged, but that

" . . . it [the discharge] be held in abeyance until the facts show that the defendant Topper has in fact related in this court all the facts that he knows concerning the crimes charged."

After argument, the court said:

"I am going to grant the motion of the prosecuting attorney to discharge the defendant Topper, that he may be a witness for the state and testify fully as to all material matters within his knowledge, *and the discharge is conditioned upon that.* If he does testify fully with reference to all matters within his knowledge, the order is self-executing." (Italics ours.)

The jury returned to the courtroom. The trial judge said:

"Ladies and gentlemen of the jury, in your absence a question of law was presented to the Court and ruled upon.

"The prosecuting attorney made a motion to discharge the defendant Topper so that he may testify as a witness for the state, and the Court has granted that motion, *providing that he testify fully as to all material matters within his knowledge.*" (Italics ours.)

Topper's testimony covers 163 pages of the statement of facts. On redirect examination by the prosecuting attorney, Topper replied in the affirmative to the following question:

"Q. Mr. Topper, when your lawyer here, Mr. Grant, talked to you about testifying in this case, talked about the question of your then being dismissed from the murder and robbery charges by the Court, did he say anything to you as to whether or not you would have to tell this Court all you knew about this, *truthfully,* just as it happened, *before that* [*Topper's discharge*] *would take place?*" (Italics ours.)

It was stated in oral argument in this court that defendant Topper left the courtroom after he had completed his testimony and was not in court during the remainder of the trial. We do not find that Topper's counsel participated further in trial proceedings. At the end of the case, the court instructed the jury that Topper had been discharged from counts I and II.

James's counsel, by proper exceptions in the trial court, and by assignments of error in this court, presents two basic questions of law on this phase of the case:

A. Did the discharge of defendant Topper, in the manner disclosed by the record, constitute a comment on the evidence and the credibility of the witness contrary to the provisions of the state constitution?

B. Must a codefendant in a criminal trial be unconditionally discharged prior to the time he testifies for the prosecution?

## A. Comment on the Evidence

Article 4, § 16, of the Washington constitution provides:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

In *State v. Crotts*, 22 Wash. 245, 250, 60 Pac. 403 (1900), the court explained that

". . . The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. . . ."

Recently, this court had occasion to analyze many of its prior decisions discussing the quoted constitutional provision and its application to various factual situations. *State v. Bogner*, 62 Wn. (2d) 247, 249, 382 P. (2d) 254 (1963). It would unduly lengthen this opinion to replow the field.

In *Bogner*[1] (decided subsequently to the trial of the instant case), we announced the rule that

". . . if the trial judge conveys to the jury his personal opinion regarding the truth or falsity of any evidence introduced at the trial, he has violated the constitutional mandate. *State v. Reed*, 56 Wn. (2d) 668, 354 P. (2d) 935 (1960); *State v. Myers*, 53 Wn. (2d) 446, 334 P. (2d) 536 (1959); *State v. Clayton*, 32 Wn. (2d) 571, 202 P. (2d) 922 (1949)."

---

[1] In addition to the authorities discussed in *Bogner, supra*, see: *State v. Coella*, 3 Wash. 99, 120, 28 Pac. 28 (1891); *State v. Primmer*, 69 Wash. 400, 125 Pac. 158 (1912); *State v. Jackson*, 83 Wash. 514, 523, 145 Pac. 470 (1915); *State v. Yanai*, 128 Wash. 568, 224 Pac. 15 (1924); *State v. Godwin*, 136 Wash. 582, 584, 240 Pac. 897 (1925); *State v. Rio*, 38 Wn. (2d) 446, 452, 230 P. (2d) 308 (1951).

The question of Topper's status as a codefendant or witness in the trial permeates much of the record prior to the completion of his testimony; his participation was not a casual occurrence in a long and protracted trial. We have outlined the factual pattern.

■ When the jury was informed by the trial court that Topper was being discharged in order to be a witness for the state, the words ". . . *providing that he testify fully as to all material matters within his [Topper's] knowledge*" became significant and meaningful to the jury.

The die was cast when Topper left the courtroom; his counsel took no further part in the trial, and the court, in its final instructions, reiterated that Topper had been discharged. The jury could draw only one conclusion: the court was satisfied that Topper had testified *"fully as to all material matters within his knowledge."* We conclude that the italicized portion of the court's remarks constituted a comment upon the evidence and an approval of the credibility of the witness. Thus, defendant James was deprived of a fair trial and is entitled to a new one.

■ The comment on the conditional discharge was unnecessary. In its defense, the prosecuting attorney argues that he was in a dilemma, since he could not depend upon Topper until he heard his testimony. We do not agree. In *Edwards v. State*, 2 Wash. 291, 295, 26 Pac. 258 (1891), the court said:

". . . if he has been discharged, and then in his testimony plays false with the court, the order of discharge will be set aside, and he will be put upon trial, even on his own confession. . . ."

B. *Necessity for Prior Unconditional Discharge*

Defendant's second contention—that a codefendant must be unconditionally discharged before testifying for the prosecution—springs from an early statute, now RCW 10.46.110, which provides:

"When two or more persons are included in one prosecution, the court may, at any time before the defendant has gone into his defense, direct any defendant to be discharged, that he may be a witness for the state. . . . The order

of discharge is a bar to another prosecution for the same offense." Laws of 1854, p. 120, § 117.

In *Edwards v. State, supra,* the court interpreted the word "prosecution" to mean "trial", so that one charged jointly, but to be tried separately, was competent to testify for the prosecution without being discharged. In *State v. Silverman,* 48 Wn. (2d) 198, 201, 292 P. (2d) 868 (1956), the procedure urged by defendant James was followed, but procedure under the statute was neither challenged nor discussed.

Some jurisdictions, with the same or a similar statute, conclude that a codefendant is incompetent to testify prior to a plea of guilty or discharge;[2] other jurisdictions conclude that a codefendant is competent and may testify voluntarily if he wishes.[3]

We do not reach the problem, however, since Topper has been discharged and the question cannot arise on a retrial of defendant James.

We turn now, briefly, to those assignments of error raising questions of law that may arise on a retrial of defendant James.

■ Defendant James, who did not testify, urges that his character was put in issue: first, by a question asked by the prosecuting attorney; and second, by a witness's answer from which it could be inferred that James was on parole.

The defendant did not object to the prosecutor's question or to its answer. Error has not been preserved and cannot be considered on this appeal. *State v. Evans,* 57 Wn. (2d) 288, 356 P. (2d) 589 (1960).

■ The answer of the other witness was unresponsive and inadvertent. Objection to it was sustained; the jury was instructed to disregard the answer; motion for a mistrial was denied.

---

[2] *State v. Broadhurst,* 184 Ore. 178, 196 P. (2d) 407 (1948); *State v. McGray,* 309 Mo. 59, 273 S.W. 1055 (1925).

[3] *People v. Snyder,* 74 Cal. App. 138, 239 Pac. 705 (1925). 2 Wigmore, Evidence (3d ed.) § 580 supports the competency of the witness.

The question raised was explored exhaustively in *State v. Johnson,* 60 Wn. (2d) 21, 371 P. (2d) 611 (1962) and *State v. Taylor,* 60 Wn. (2d) 32, 371 P. (2d) 617 (1962).

"The test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?" *State v. Johnson, supra.*

We are unable to say that the witness's chance remark, standing alone, deprived defendant of a fair trial.

■ A prospective juror, later foreman, testified he had an opinion concerning the case. He said: "If no evidence is offered to change my opinion, I would have that same opinion." Defendant's challenge for cause should have been sustained. *State v. Coella,* 3 Wash. 99, 28 Pac. 28 (1891).

■ In his opening statement, the prosecuting attorney said that James, after arrest

". . . . didn't want to talk about that [the robbery and killing]—which was his constitutional right—and his basic position was, 'You prove what happened.'"

The statement should not have been made. Defendant had a constitutional right to remain silent. See *State v. Tembruell,* 50 Wn. (2d) 456, 460, 312 P. (2d) 809 (1957), and authorities cited.

■ Finally, defendant contends the court erred when it admitted into evidence stolen automobile license plates and a hunting knife (and pictures thereof) found in the hole with the stolen money and the alleged murder weapon. He urges they are evidence of a collateral crime not charged and hence inadmissible. We do not agree.

After a review of the record, we conclude, as did the trial court, that these exhibits are admissible in evidence for they tend to prove the identity of defendant as the perpetrator of the crime charged. See *State v. O'Donnell,* 195 Wash. 471, 475, 81 P. (2d) 509 (1938).

The judgment and sentence are reversed. The case is remanded with instructions to grant defendant James a new trial.

It is so ordered.

ALL CONCUR.