[No. 38953.    Department Two.    March 31, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES GREGORY ROBIDEAU, *Appellant*.*

*Irving C. Paul, Jr.,* for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *Edwin S. Stone,* for respondent.

*Reported in 425 P.2d 880.

ARMSTRONG, J.†—Appellant James Robideau was charged with the armed robbery of Big John's Thriftway store in Seattle on January 21, 1966. His trial commenced March 21, 1966. Six eye witnesses identified appellant as the person who committed the crime. Appellant was the only witness for the defense.

The appellant's principal defense was alibi. He testified that he had not left a particular house the day the crime was committed. The deputy prosecutor, during the cross-examination, asked the appellant whether he at any time had told the police that he had been at that house all day on January 21. The appellant answered "no." The trial court overruled appellant's objection to that question, but refused to permit the deputy prosecutor to ask appellant why he had not told the police. A motion for a mistrial was denied.

During closing argument, the deputy prosecutor repeated the above question and appellant's answer of "no." He then asked, "Is that a logical thing to do?" He went on to say, "Any person being accused of a crime, wouldn't he naturally and normally say, 'I wasn't there. I was over here'?"

Defense counsel's motions for a mistrial based upon the deputy prosecutor's statements in argument were denied.

Appellant concedes that when a defendant takes the witness stand in his own behalf he may be cross-examined with reference to any inconsistent statements he may have made, but appellant contends that questioning him about whether he made any statement to the police about his whereabouts on the day in question was a violation of his right to remain silent which is guaranteed by the fifth amendment to the United States Constitution.

In his second assignment of error, appellant contends that the deputy prosecutor's comments in his final argument about appellant's failure to assert his alibi to the police, over appropriate objection and request for a mis-

---

†Judge Armstrong is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

trial, trenched upon appellant's rights not to incriminate himself as specified in the fifth amendment of the United States Constitution.

During the trial of this case no mention of appellant's alibi was made in either the state's opening statement or in the state's case in chief. The question in issue was asked after the appellant took the witness stand in his own defense.

Both assignments of error raise essentially a single issue: Can a defendant who voluntarily takes the witness stand, and through his own testimony asserts alibi, be cross-examined by being asked whether he, at any time, told the police officer about the alibi?

Our answer is in the affirmative.

The issues in the cases cited below by appellant are different from the primary issue raised in this appeal. There are no Washington cases nor United States Supreme Court cases directly in point.

In *State v. James,* 63 Wn.2d 71, 385 P.2d 558 (1963), the issue evolved from the prosecuting attorney in his opening statement commenting upon the fact that defendant, after his arrest, did not want to talk about the crime. The issue in the cases of *State v. Redwine,* 23 Wn.2d 467, 161 P.2d 205 (1945), and *State v. Tembruell,* 50 Wn.2d 456, 312 P.2d 809 (1957), arose from the prosecution in its case in chief introducing evidence to show that accusatory, incriminating statements were made in the presence of the defendant and the defendant did not deny, contradict, or object to the statements. In *Griffin v. California,* 380 U.S. 609, 14 L.Ed. 2d 106, 85 Sup. Ct. 1229 (1965), the issue precipitated from the closing argument of the prosecuting attorney in which he made adverse comments about the defendant's failure to take the stand and testify.

Article 1, § 9 of the Washington State Constitution provides that no defendant in a criminal prosecution can be compelled to take the witness stand and testify against himself. Article 1, § 22 gives the defendant the right to

testify. RCW 10.52.040 provides that if the defendant takes the witness stand in his own behalf he shall be subject to all the rules of law relating to cross-examination of other witnesses.

The theory of cross-examination is set forth in 5 Wigmore, Evidence § 1368 (3d ed. 1940):

> The fundamental feature is that a witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness.

We have recognized this theory of cross-examination in *Wilson v. Miller Flour Mills*, 144 Wash. 60, 66, 256 Pac. 777 (1927):

> It is true that this court has adopted the so-called American rule relative to the cross-examination of witnesses, but we have not so narrowed it as to hold that the cross-examination must be confined to the questions asked on the direct examination. On the contrary, we have said that when, in the direct examination, "a general subject is unfolded, the cross-examination may develop and explore the various phases of that subject." (Citing cases.)

The foregoing principles were summarized in *State v. Jeane*, 35 Wn.2d 423, 431, 213 P.2d 633 (1950):

> It is the general rule in both civil and criminal cases that the cross-examination of a witness is limited to the scope of the direct examination. Within its discretion, the trial court can grant considerable latitude in cross-examination. When a defendant in a criminal case takes the stand, he is subject to all the rules relating to the cross-examination of other witnesses; . . . .

In *State v. Anderson*, 46 Wn.2d 864, 285 P.2d 879 (1955), a defense of alibi was asserted. A police officer was asked if he had inquired of the defendant as to his whereabouts on the night of the robbery. He replied that he had, and defendant could not tell him where he was on that night. It was contended on appeal that this was a purely collateral

matter. This court stated at 869: "We do not agree. The subject-matter of these rebuttal questions was in no sense collateral. It pertained to appellant's defense of alibi. The objections in these questions were properly overruled."

We conclude that a defendant may be cross-examined in the same manner as any other witness if he voluntarily asserts his right to testify. Any fact which diminishes the personal trustworthiness of the witness may be elicited if it is material and germane to the issue. If a defendant raises a defense of alibi, then cross-examination relative to whether he told any police officers where he was on the day the crime was committed would be material and germane, because it would bear upon the question of whether his alibi was a recent fabrication. Here the question was material and within the scope of the direct examination.

Our next inquiry is whether the question and answer infringe upon defendant's right to remain silent which is accorded him by art. 1, § 9 of the Washington State Constitution and by the fifth amendment to the United States Constitution.

We considered this question in *State v. Crowder*, 119 Wash. 450, 453, 205 Pac. 850 (1922), in connection with the protection offered by our state constitution. We stated:

As to the constitutional question, there is no doubt that, when the accused takes the witness stand in his own behalf and by his testimony in chief opens up a pertinent subject, *he thereby submits himself to proper cross-examination on such subject,* and may not prevent or defeat cross-examination thereon by claiming the protection of the constitutional provision. (Citing cases.) (Italics ours.)

A different perspective of the problem was considered in *State v. West, ante* p. 751, 424 P.2d 1014 (1967). There an officer took the stand and on cross-examination the fact that the defendant had, upon arrest, made a statement, but had not admitted certain connections with the crime was elicited. Thereafter, on redirect the officer testified to the balance of the conversation, over appellant's objection, that

the statements were involuntary and thus inadmissible. In concluding that voluntariness was not material, we said at 754:

> Appellant was not at liberty to explore broad areas at will, seek to leave inferences with the jury and then preclude the state from attempting to explain or rebut the inferences. A different rule would permit an accused to place half-truths before the jury. This would frequently be more misleading than falsehoods. . . .

> Where one party has introduced part of a conversation the opposing party is entitled to introduce the balance thereof in order to explain, modify or rebut the evidence already introduced insofar as it relates to the same subject matter and is relevant to the issue involved. This is true though the evidence might have been inadmissible in the first place. 22A C.J.S. *Criminal Law* § 660(c) at 655.

In *State v. Kaufman,* 211 La. 517, 533, 30 So. 2d 337 (1947), the appellant was tried for negligent homicide. The appellant took the stand and testified that at the time of the incident he was not under the influence of intoxicants. The prosecution asked the appellant on cross-examination: "Mr. Kaufman, will you now state to the jury whether, after you got to St. Patrick's Hospital, you were requested by anyone to submit to a test of alcoholism?"

The trial court overruled an objection by the appellant that the question would require an incriminating answer, and the Louisiana Supreme Court affirmed the trial court.

In considering the relationship between the protection of an accused against self-incrimination and the decision by the accused to testify on his own behalf, the Louisiana court stated at 534:

> The accused having elected to testify in his own behalf and having testified on direct examination that he was not under the influence of intoxicating liquor at the time of the· accident, it was proper for the State to cross-examine him on this phase of the case, and the trial judge correctly overruled the objection.

In explanation of its ruling the Louisiana Supreme Court further stated at 535:

The rule with reference to waiver of privilege against self-incrimination by a defendant who voluntarily takes the stand as a witness on his own behalf is given in 8 Wigmore on Evidence, 3rd Ed., Section 2276, Subsection 2, page 440, as follows: "The case of an *accused* in a criminal trial who *voluntarily* takes the stand, is different [from that of an ordinary witness]. Here his privilege has protected him from being asked even a single question, for the reason that no relevant fact could be inquired about that would not tend to criminate him. * * * On this very hypothesis, then, his voluntary offer of testimony upon any fact is a waiver as to *all other relevant facts*, because of the necessary connection between all. His situation is distinct from that of the ordinary witness, with reference to the point of time when a waiver can be predicated, because the ordinary witness is compelled to take the stand in the first instance, and his opportunity for choice does not come till later,when some part of the criminating fact is asked for; while the accused has the choice at the outset."

More directly in point is *Peckham v. United States*, 210 F.2d 693 (D.C. Cir. 1953). The United States Court of Appeals, District of Columbia Circuit, was there considering a case in which the accused was asked on cross-examination why he would not make a statement to the police. In response to an officer's question about the offense the accused had responded "no answer", "no statement." At 699 the court stated:

The contention now is that prejudice resulted in permitting defendant to be cross-examined as to why he would make no statement to the officer. If it is thought that he was insulated from cross-examination in this regard because of the Fifth Amendment's protection against self-incrimination the point is disposed of by *Raffel v. United States*, 271 U.S. 494, 46 S. Ct. 566, 70 L.Ed. 1054. It was there held that when a defendant takes the stand in his own defense he may be cross-examined about his failure to testify on his previous trial for the same offense. This court has similarly ruled in *Viereck v. United States*, 78 U.S. App. D.C. 279, 139 F.2d 847, certiorari denied, 321 U.S. 794, 64 S. Ct. 787, 88 L. Ed. 1083. Implicit in these decisions is the right to cross-examine a defendant about his failure to seek to exonerate himself when questioned

on a previous occasion, for if such cross-examination does not invade the protection of the Fifth Amendment in the circumstances presented in the Raffel and Viereck cases it does not invade its protection here. And we know of no other basis for excluding the cross-examination, assuming, as we do, that the "No statement" evidence was properly admitted; for even if the accused could validly refuse to make a statement nevertheless when he took the stand he could be asked why he refused.

The United States Court of Appeals in *Jones v. United States*, 296 F.2d 398 (D.C. Cir. 1961), *cert. denied*, 370 U.S. 913, 8 L. Ed. 2d 406, 82 Sup. Ct. 1260 (1962), cited *Peckham v. United States, supra,* and set forth the following:

> The rule is that when an accused voluntarily takes the stand he waives his constitutional rights as to all matters concerning which cross-examination is otherwise normally proper.

When the defendant asserted a defense of alibi he was susceptible to thorough cross-examination on it. It was proper for the deputy prosecutor to inquire whether he had at any time told the police about his whereabouts on the day the crime was committed. Having voluntarily taken the witness stand he waived his constitutional right against self-incrimination as to all matters concerning which cross-examination was proper. Plaintiff's first assignment of error is not meritorious.

Appellant's second assignment of error relates to the alleged misconduct of the deputy prosecuting attorney in his summation.

In *State v. Brown,* 35 Wn.2d 379, 386, 213 P.2d 305 (1949), we said:

> We have held that, while intemperate assertions of opinion not based upon evidence will not be tolerated, prosecuting officers will be permitted a reasonable latitude in argumentative deduction from the evidence. *State v. Peeples,* 71 Wash. 451, 129 Pac. 108.

The deputy prosecutor's argument was based upon testimonial evidence which we have ruled was properly elicited

1002    ■■■■■    ■■■

from appellant, and drew conclusions which were both fair and reasonable. The argument was proper.

The judgment of the trial court is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.