[No. 51344-9. En Banc. October 2, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP ARTHUR SMITH, *Petitioner.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca J. Roe, Deputy,* for respondent.

PEARSON, J.—The principal issue presented in this

appeal is whether the trial court committed reversible error by admitting, pursuant to ER 404(b), extensive evidence of three burglaries, admittedly committed by the defendant, to prove the identity of the defendant as the perpetrator of three rapes for which no assailant had been positively identified. Over 35 years ago, Justice Hill warned against the admission of such evidence, where "its effect would be to generate heat instead of diffusing light, or . . . where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." *State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950). In our opinion, this warning was not heeded in this case. Accordingly, we reverse and remand for a new trial.

I

In this case, the State confronted a significant problem. Three Seattle women had been raped by an *unknown* assailant, and none of the women could positively identify the man who had accosted them. Based upon a composite of descriptive characteristics of the assailant offered by the three women, it appears the rapist: (1) was a light–skinned black man, (2) who was very clean shaven, (3) wore a short afro, (4) was about 5 feet 5 inches to 5 feet 7 inches in height, (5) wore a leather jacket, (6) and leather gloves, (7) and had a gentle voice.

Despite the aforementioned similarities, there was some degree of inconsistency between the physical characteristics of the assailant or assailants described by the women. Furthermore, there were several troubling dissimilarities with respect to the rapist's modus operandi. As made clear by the testimony supplied by the rape victims, the three rapes might have been committed by two or more different assailants, each of whom coincidentally bore the same general physical characteristics observed by the victims. On the other hand, all three rapes might have been committed by the same assailant. Regardless, the State had no concrete evidence establishing the assailant's identity.

Unfortunately for the defendant, he fit the general physical description of the rapist, and was known to have bur-

glarized, or attempted to burglarize, three ground–floor apartments in Seattle during the same time the rapes occurred. Apparently noticing the general physical similarities between the unknown rapist and the defendant, the State seized the opportunity after defendant's third burglary arrest, and charged him with three counts of first degree rape.

As stated above, however, the State could not obtain positive identification of the defendant from the rape victims. To prove identity, the State sought to admit into evidence the facts surrounding defendant's burglaries, arguing that the modus operandi of the burglaries was sufficiently similar to the modus operandi of the rapes, thus proving that the one who committed the burglaries (defendant) also was the unknown assailant who committed the three rapes.

At trial, defense counsel moved in limine to exclude evidence of the burglaries, arguing the evidence was irrelevant and, regardless, the prejudicial effect of the evidence outweighed whatever relevance the burglaries had to the rapes. Without analyzing these contentions on the record, the trial judge denied the motion, ruling the evidence was admissible. Defendant appealed, arguing that the burglary evidence was inadmissible under ER 404(b) and this court's interpretations of that rule.

II

The admissibility of the burglary evidence is governed by ER 404(b), which permits evidence of other crimes to show "identity", but not "to prove the character of a person in order to show that he acted in conformity therewith." As we said in State v. Saltarelli, 98 Wn.2d 358, 361, 655 P.2d 697 (1982), ER 404(b) must be read in conjunction with ER 402 and 403. ER 402 prohibits admission of evidence which is not relevant. Relevant evidence is defined in ER 401 as

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence.

ER 403 requires exclusion of evidence, *even if relevant,* if its probative value is substantially outweighed by the danger of unfair prejudice. *See State v. Goebel, supra.* As stated in *State v. Coe,* 101 Wn.2d 772, 780–81, 684 P.2d 668 (1984), "[c]areful consideration and weighing of both relevance and prejudice is particularly important in sex cases, where the potential for prejudice is at its highest."

In *Saltarelli,* this court defined the analysis a trial court must employ before admitting evidence of other crimes. First, the court must identify the *purpose* for which the evidence is to be admitted. *Saltarelli,* at 362. Second, the court must determine the *relevancy* of the evidence. In determining relevancy, (1) the purpose for which the evidence is offered "must be of consequence to the outcome of the action", *and* (2) "the evidence must tend to make the existence of the identified fact more . . . probable." *Saltarelli,* at 362–63. Third, after the court has determined relevancy, it must then "balance the probative value against the *prejudicial effect* . . ." (Italics ours.) *Saltarelli,* at 363. As stated in *State v. Bennett,* 36 Wn. App. 176, 180, 672 P.2d 772 (1983), "[i]n doubtful cases the scale should be tipped in favor of the defendant and exclusion of the evidence."

In *State v. Jackson,* 102 Wn.2d 689, 694, 689 P.2d 76 (1984), this court held that a trial court errs if the judge does not undergo the aforesaid analysis *on the record.* Failure to do so precludes the trial court's "thoughtful consideration of the issue", and frustrates effective appellate review. *Jackson,* at 694. The trial court in this case did not analyze the admissibility of the burglary evidence on the record. Although *Jackson* had not been decided by the time this case was tried, the parties did not address the question of whether *Jackson* should be given retroactive effect. Accordingly, we decline to resolve the issue at this time. Nevertheless, we again reiterate that, without a complete analysis appearing on the record, we are unable to determine whether a trial court's exercise of discretion was based upon a careful and thoughtful consideration of the issue.

As stated above, *Saltarelli* requires that we identify the purpose for which the burglary evidence was offered. The record reveals the State offered the evidence of defendant's burglaries for the purported purpose of proving the identity of the defendant as the rapist. *Saltarelli* also requires this court to determine whether the purpose for which the State offers the evidence is of consequence to the rape prosecution. In this case, identification of the defendant clearly was of great consequence to the prosecution. To be relevant under *Saltarelli,* however, the proffered evidence must make the existence of the identified fact—in this case defendant's identity—more probable than it would be without the evidence. In our opinion, the evidence that the defendant committed three burglaries fails this prong of the *Saltarelli* relevance test.

Our conclusion rests upon two decisions, *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984) and *State v. Coe, supra,* in which this court dealt with the propriety of admitting *Goebel* evidence to establish identity. In our opinion, *Laureano* and *Coe* control the result in this case.

In *Laureano,* the State prosecuted the defendant for a first degree murder which occurred during the robbery of a couple at their home. The State sought to offer evidence of a similar robbery for which the defendant was arrested, in order to prove his identity as the perpetrator of the earlier murder. In holding the evidence of the second robbery was admissible to show the defendant's identity as the murderer, we stated:

> The method employed in the commission of both crimes *must be so unique* that mere proof that an accused committed one of them creates *high probability* that he also committed the act charged.

(Italics ours.) *Laureano,* at 764 (citing *State v. Irving,* 24 Wn. App. 370, 374, 601 P.2d 954 (1979), *review denied,* 93 Wn.2d 1007 (1980)). Furthermore, the court went on to quote Professor Meisenholder for the proposition that:

> *Mere similarity* of crimes will not justify the introduction of other criminal acts under the rule. There must

be something *distinctive or unusual* in the *means employed* in such crimes *and* the *crime charged.*

(Italics ours.) *Laureano,* at 765 (quoting 5 R. Meisenholder, Wash. Prac. § 4, at 13 (1965), *quoted in State v. Irving,* at 374).

In *Laureano,* this court found there were a number of distinctive characteristics common to the two crimes. *Laureano,* at 765. Although not all of the characteristics described in *Laureano* were "unique", there were sufficient distinctive characteristics between the crimes to justify the conclusion that there was a high probability the same person committed both crimes. In short, the proffered evidence was relevant. As discussed below, however, the same simply cannot be said in this case.

In *State v. Coe, supra,* the State sought to introduce evidence of the defendant's prior sexual acts with his girl friend to establish the defendant's modus operandi, and thereby his identity as a rapist. This court again said that

> [t]he method employed in committing the act *must be so unique* that mere proof that an accused acted in a certain way at a certain time creates a *high probability* that he also committed the act charged.

(Citations omitted. Italics ours.) *Coe,* at 777. The court went on to state that "'[t]he device used must be so unusual and distinctive as to be like a signature.'" *Coe,* at 777 (citing E. Cleary, *McCormick on Evidence* § 190, at 449 (2d ed. 1972)).

This court then explained why signature–like similarity is required. "The requirement that the evidence be distinctive or unusual insures that the evidence is relevant. The greater the distinctiveness . . . the higher the probability that the defendant committed the crime." *Coe,* at 777–78. The court went on to hold that "[t]he words and actions of the perpetrator of the rape, though similar to Coe's behavior with his former girl friend, do not meet the *stringent test of uniqueness* required for admission to establish identity." (Italics ours.) *Coe,* at 778. Likewise, applying this "stringent test of uniqueness" to this case, we conclude that

evidence of defendant's burglaries *was not relevant,* and therefore should have been excluded by the trial court.

The State identifies several very *general* similarities between the rapes and the burglaries with respect to the time, manner and location of the crimes, and notes that the rapist and defendant both wore a leather jacket and gloves when committing the crimes. In our opinion, these general similarities might have been as much due to coincidence as to modus operandi.

Regardless, there were few, if any, distinctive or unique characteristics shared in common between the burglaries and the rapes. For example: (1) of the three burglaries and three rapes, only one rape and one burglary occurred on the same day or in close proximity to one another; (2) in the case of all six crimes, the mode of entry, through a door or window, was not unusual, let alone unique; (3) the items stolen in the burglaries differed somewhat from those taken at the scene of the rapes; (4) the clothing worn by defendant at the time of his arrest for burglary differed from that worn by the rapist; (5) the rapist wore gloves during each of the rapes, whereas defendant did not wear gloves during at least one of the burglaries.

Despite the existence of these marked dissimilarities, and the absence of any distinctive similarities, the trial court admitted the burglary evidence. In *Laureano,* we admitted evidence of the second burglary on the ground the trial court's decision was not "manifestly unreasonable". The reason its decision was not manifestly unreasonable is obvious: the evidence met the relevancy requirements of our decisions interpreting ER 404(b) because there were distinctive characteristics present in both crimes. In this case, on the other hand, the burglary evidence was not relevant under ER 404(b) because of the absence of *any* distinctive similarities between the rapes and the burglaries. Therefore, the trial court abused its discretion by admitting it.

Because the burglary evidence is not relevant, we do not find it necessary to engage in an in–depth discussion of whether the danger of unfair prejudice demands exclusion

of the evidence. Suffice it to say, however, that regardless of the limited probative value inhering in the evidence, the danger of unfair prejudice looms large. To admit such evidence in a rape trial for which no defendant has been positively identified simply invites the jury to engage in speculation. Such a result is contrary to the fundamental principles of fairness and due process upon which our criminal justice system is based.

### III

Mere inadmissibility of the burglary evidence does not resolve this case. This court must consider whether admission of the inadmissible evidence constitutes reversible error.

An accused cannot avail himself of error as a ground for reversal unless it has been prejudicial. *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). In *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984), we held that "[e]videntiary errors under ER 404 are not of constitutional magnitude." Where the error is not of constitutional magnitude, we apply the rule that "error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." (Citations omitted.) *Cunningham,* at 831. *Accord, State v. Robtoy,* 98 Wn.2d 30, 44, 653 P.2d 284 (1982).

A review of the record compels our conclusion that the outcome of the trial might reasonably have been materially affected if the trial court had excluded the challenged evidence. As set forth earlier in this opinion, no one could positively identify the defendant as the rapist. Furthermore, testimony from the victims reveals that the three rapes could have been committed by two or more different persons. Where identity of the accused is such a crucial issue, evidence of other *unrelated crimes* generates a good deal more heat than light, and may well be the basis upon which the jury convicts the accused. Under the test enunciated in *Cunningham,* admission of the evidence was preju-

dicial error, entitling defendant to a new trial.

## IV

■ The defendant also argues that, ignoring the burglary evidence, the prosecution adduced insufficient evidence that defendant was the perpetrator of the three rapes. The question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Italics omitted.) *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). After reviewing the record, we conclude the circumstantial evidence as to the identification of the defendant as the rapist, together with the equivocal identifications by the victims, constitutes sufficient evidence upon which a rational trier of fact could conclude that defendant was the perpetrator of the rapes. Accordingly, we reverse the defendant's conviction and remand for a new trial.

DOLLIVER, C.J., and UTTER, DORE, and GOODLOE, JJ., concur.

CALLOW, J.—I concur in the result reached by the majority. I agree that the evidence of the three burglaries is too remote to be relevant and admitted as evidence to prove that the defendant committed the rapes. I do not agree with the majority's interpretation and application of ER 403 and ER 404(b).

My objection to the majority opinion is the adoption of the criteria espoused in *State v. Coe,* 101 Wn.2d 772, 684 P.2d 668 (1984) and *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984). Under those cases the comparison of the similar crime to the crime charged "must be so unique that mere proof that an accused committed" the similar crime creates a *high* probability that he also committed the act charged. This stretching of the rule creates a standard never envisioned in *State v. Goebel,* 36 Wn.2d 367, 218

P.2d 300 (1950), ER 403 and ER 404(b). Under the rule as expressed by the majority the jury will seldom, if ever, be allowed to assess the evidence of any similar act unless it is a carbon copy of the act charged. The court, by judicial interpretation, has written ER 403 and ER 404(b) out of the book for all practical purposes. This is the effect of the nibbling away at the rule accomplished by the statement in *Coe,* at 777, "[t]he device used must be so unusual and distinctive as to be like a signature." One can scarcely expect to find such mirror images left by the perpetrators of crime unless they suffer from a Zorro–complex or *intend* to leave the imprimatur of a bizarre modus operandi.

*State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982) observes that the evidence rules are to be read together. ER 402, ER 403 and ER 404(b) must be read in conjunction with ER 401 which as the majority at 775–76 states:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence.

I submit that evidence which has *any* tendency to make the existence of any fact more probable than it would be without the evidence is a standard far more practical and workable than the *Coe* requirement that the one act be an exact overlay of the other. It is a far cry and a giant leap to go from the statements in *Saltarelli* to the requirements of *Coe.*

I fully agree with the holding of the majority that the evidence of the burglaries invites the jury to speculate that the person who committed the burglaries also committed the rapes. However, reiterating the *Coe* standard for the application of the evidence rules in issue is a punctilious stretching of the standards beyond anything originally conceived of in *State v. Goebel, supra,* and *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). When the criteria was stated in *State v. Laureano, supra,* that there had to be sufficiently distinctive characteristics between the acts, that was one thing; but when *State v. Coe, supra,* went so far as

to narrow the availability of evidence by requiring that the acts had to be so unique as to create a high probability and so distinctive as to be like a signature, the use of evidence under the rule was effectively snuffed out. The comment that the device must be like a "signature" should not be construed to mean that the "other crime" must be exactly the same in every detail as the crime with which the defendant is accused. Yet that is how the rule is being interpreted. As every person's signature differs each time from every other but retains many similarities, so too each series of acts or crimes may have many similarities and several circumstances which are not alike. In each situation the concern is relevancy and the decision of the trial court as to whether the evidence of the other act is relevant and probative to prove identity should be given substantial weight. The trial court and the Court of Appeals, in its unpublished opinion, found that "the similarities were sufficiently pronounced to permit a conclusion that the facts surrounding the burglaries were indeed relevant and probative of the identity of the rapist." I agree with the rejection of this conclusion by the majority because, on reflection, the admission of the evidence of the burglaries was an invitation to the jury to speculate.

I am, however, disturbed by the overturning of the trial court in this situation and by the closeness of the call in view of the fact that both counsel for the prosecution and for the defense accepted the appropriateness of the instruction to the jury in the proper use of the evidence to prove identity. The trial court instructed the jury as follows:

> Evidence has been received concerning prior misconduct of the defendant other than that for which he is on trial.
> Such evidence was not received and may not be considered by you to prove that the defendant is a person of bad character or that the defendant had a predisposition to commit the crimes for which he or she is on trial.
> This evidence was received and may be considered by

you only for the limited purpose of determining whether it tends to prove defendant's identity.

The defendant took no exception to this instruction and, in fact, proposed an instruction, in the form set out in WPIC 5.30, telling the jury that it could consider the prior burglaries committed by the defendant for "the limited purpose of identity."

I concur in the result because I assess the evidence, as does the majority, as being too remote and speculative to be relevant. I reject the rationale of the majority because the progression of the opinions concerning this rule has diminished the rule to nothingness. I find *State v. Coe, supra,* which is now looked upon as the bellwether of the rule to be at odds with ER 401, ER 402, ER 403 and ER 404(b). *State v. Jackson,* 102 Wn.2d 689, 689 P.2d 76 (1984); *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Hess,* 86 Wn.2d 51, 541 P.2d 1222 (1975); *State v. Bell,* 83 Wn.2d 383, 518 P.2d 696 (1974); *State v. Gilmore,* 76 Wn.2d 293, 456 P.2d 344 (1969); *State v. Russell,* 70 Wn.2d 552, 424 P.2d 639 (1967); and *State v. James,* 63 Wn.2d 71, 385 P.2d 558 (1963).

BRACHTENBACH and ANDERSEN, JJ., and BAKER, J. Pro Tem., concur with CALLOW, J.