FILED
COURT OF APPEALS DIV.I
STATE OF WASHINGTON

2018 JUL 23 AM 10: 15

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76368-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN SCOTT GRIFFITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 23, 2018 |
| | ) | |

VERELLEN, J. — Kevin Griffith appeals his jury conviction for child molestation in the first degree, domestic violence. Griffith argues that the trial court impermissibly commented on the evidence and committed structural error by failing to instruct the jury that it must deliberate only while together. In his statement of additional grounds, Griffith also argues that the prosecutor committed misconduct, that his trial counsel was ineffective, and that the trial court abused its discretion in denying the admission of hearsay evidence. Finding no error, we affirm.

## FACTS

The State charged Griffith by amended information with child molestation in the first degree, domestic violence, alleging that he molested his then five-year-old daughter, D.G. D.G. is the daughter of Griffith and Amanda Ricks.

At trial, the State presented testimony from several witnesses. According to Ricks's testimony, she suspected Griffith molested D.G. during an overnight visit after her friend and roommate, Amanda Swaner, told Ricks that D.G. had a dream about having babies with her "daddy."[1] Ricks questioned D.G., who responded that her "daddy" touched her "hoo hoo" and "butt."[2] Ricks notified police of the abuse the same day.

D.G also testified. She explained that Griffith tucked her into bed and "started digging into [her] pants" and touched her "hoo hoo."[3] Other witnesses included Thomas Taylor and Lisa Wahl. Taylor, a child interview specialist, interviewed D.G. five days after Ricks reported the abuse. The court admitted and the State played a video recording of Taylor's interview with D.G. and her descriptions of the abuse, which were consistent with D.G. and Ricks's testimony. Wahl, an advanced registered nurse practitioner in the Providence St. Peter Hospital sexual assault and child maltreatment center, also testified. The jury listened to an audio recording of her interview with D.G. about a week after Taylor's interview. In the interview, D.G. again states that Griffith touched her "hoo hoo" with his hand.

Griffith's only defense witness was Dr. Hugues Herve, a child psychologist who specializes in issues of interviewing, credibility assessment, and memory. He

---

[1] Report of Proceedings (RP) (Oct. 26, 2016) at 973.

[2] RP (Oct. 25, 2016) at 908.

[3] RP (Oct. 27, 2016) at 1093.

testified that the interviews performed by Taylor and Wahl included leading and suggestive questions with specific reinforcement of answers. The defense's theory of the case was that D.G. was susceptible to manipulation because she suffered from developmental delays and that Ricks questioned her in a way that led her to adopt false molestation claims as true. Defense counsel argued that D.G.'s false claims were then reinforced with additional leading questions from Taylor and Wahl, contaminating D.G.'s memory.

The jury convicted Griffith as charged. Because Griffith had a prior conviction for first degree child rape, the trial court sentenced him to life without parole as a persistent offender.

Griffith appeals.

## ANALYSIS

### Comment on the Evidence

Article IV, section 16 of the Washington State Constitution states that "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "This provision prohibits a judge from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'"[4]

---

[4] State v. Besabe, 166 Wn. App. 872, 880, 271 P.3d 387 (2012) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

The purpose of this provision "is to prevent the jury from being influenced by . . . the court's opinion of the submitted evidence."[5]

A jury instruction may constitute an improper comment on the evidence.[6] An instruction improperly comments on the evidence when it "relieve[s] the prosecution of its burden" of proof or "resolve[s] a contested factual issue" for the jury.[7] A jury instruction does not comment on the evidence when it "'does no more than accurately state the law pertaining to an issue'"[8] Further, an instruction does not comment on the evidence if the court expresses no opinion on the parties' character or credibility or the strength of their case but merely articulates the basis for evidentiary rulings or appropriately instructs the jury on the use of evidence admitted for limited purposes.[9] "We review a challenged jury instruction de novo, within the context of the jury instructions as a whole.[10]

First, Griffith argues that the trial court improperly commented on the evidence during Ricks's testimony as she described her initial conversation with D.G. Ricks testified that

---

[5] State v. Miller, 179 Wn. App. 91, 107, 316 P.3d 1143 (2014).

[6] Id.

[7] State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

[8] Id. (quoting State v. Woods, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001), overruled on other grounds by State v. Schierman, ___ Wn.2d ___, 415 P.3d 106 (2018)).

[9] Wuth v. Lab. Corp. of Am., 189 Wn. App. 660, 700, 359 P.3d 841 (2015).

[10] Id. at 698 (quoting Gregoire v. City of Oak Harbor, 170 Wn.2d 628, 635, 244 P.3d 924 (2010)).

> [D.G.] asked me if she was in trouble. I told her no, I just wanted to talk to her. And so I closed the door with her coming in in front of me. I get on my knees. The door is shut. I get on my knees in front of her to get at her level and ask her if her dad, if -- I said, "[D.G.], does your daddy touch you?" And she looked at me and she goes, "Yes." I said, "Where does Daddy touch you?" and she said, "My hoo hoo and my butt." I said, "Does it hurt when Daddy touches you?" She looked at me like she knew I knew something. I don't know.[11]

Defense counsel objected as to speculation and asked that "the answer" be stricken. The trial court responded, "I'll sustain, strike that, and ask the jury to disregard that statement about what [D.G.] knew."[12]

At the end of the day, the prosecutor argued that the limiting instruction was confusing as to which part of Ricks's testimony was stricken, and he asked the court to either instruct the jury again or allow him to ask the questions again. Defense counsel objected to this request, arguing that both options would ring the bell and reinforce the testimony in the jurors' minds. The trial court agreed to review the record and consider whether clarification was appropriate.

The following morning, the trial court reviewed the verbatim testimony with both parties. The court explained that "while I think what I asked them to disregard was pretty surgical, I do think there's some room for the answer, for the record to not be clear and for the jurors to not be clear when I said, 'I will sustain and strike that' really simply because the answer had gone for a long time."[13] After hearing

---

[11] RP (Oct. 25, 2016) at 908.

[12] Id.

[13] RP (Oct. 26, 2016) at 933.

5

argument from both sides and noting defense counsel's objection to any further instruction to the jury, the trial court eventually instructed the jury,

> Yesterday I sustained an objection during testimony from Ms. Ricks about her discussion with [D.G.] in the bedroom. Ms. Ricks said that [D.G.] had looked at her "like she knew I knew something." The only portion of Ms. Ricks's testimony was stricken and that you must disregard is the part about [D.G.] looking at her as if she knew something. *The rest of Ms. Ricks's testimony before that statement is admitted*.[14]

When considered in context, the trial court's instructions did not implicitly opine as to any matter to be determined by the jury. The trial court's instruction that "[t]he rest of Ms. Ricks's testimony before that statement is admitted" did not imply that the rest of Ricks's testimony was true. The statement merely articulated the basis for the evidentiary ruling and appropriately instructed the jury that all but that portion of Ricks's testimony was admissible.

Next, Griffith argues that the trial court improperly commented on the evidence during the testimony of Federal Way Officer Travis Loyd, who took Ricks's police report. When cross-examining Ricks, defense counsel asked whether she lied about the questions she initially asked D.G. to make them appear less leading. As a result, the prosecutor called Officer Loyd, who testified that the first question Ricks reported asking D.G. was "Does Daddy touch you?"[15] Defense counsel objected to the statement as hearsay, and the trial court overruled the objection, stating

---

[14] Id. at 958-59 (emphasis added).

[15] RP (Oct. 27, 2016) at 1158.

> I'm going to overrule it and allow it to be offered not for the truth of the matter asserted. So the jury is to consider this particular testimony in terms of the questions and answers that were given by Ms. Ricks, but not to consider it as evidence as to what happened.[16]

Officer Loyd then testified that Ricks reported her next question to D.G. was "Where?"[17] This prompted defense counsel to note a continuing objection, and the trial court replied, "Alright. And the same ruling. And the same direction to the jury, that it's for the fact that it was said, not for the truth of the matter."[18]

Griffith contends the trial court's instructions implied that it found Ricks's testimony about the questions she initially asked D.G. credible. But the court's instruction that Officer Loyd's testimony was admitted "for the fact that it was said, not for the truth of the matter" did not imply that the court believed Ricks made those statements. As with any instruction that evidence has been admitted for a limited purpose, it was still up to the jury to determine whether the evidence admitted for that limited purpose was credible. Therefore, there was no error.

Griffith argues that the trial court's comments are similar to comments held improper in several other cases including State v. Lampshire,[19] State v. James,[20] State v. Bogner,[21] and State v. Vaughn.[22] But in each of those cases, the trial

---

[16] Id. at 1158-59.

[17] Id. at 1159.

[18] Id.

[19] 74 Wn.2d 888, 447 P.2d 727 (1968).

[20] 63 Wn.2d 71, 385 P.2d 558 (1963).

[21] 62 Wn.2d 247, 382 P.2d 254 (1963).

court's comments implicitly conveyed an opinion concerning the worth or credibility of the testimony at issue.[23]  Here, the trial court's instructions have no such effect. As such, those cases are not persuasive.

*Jury Instructions*

For the first time on appeal, Griffith argues that the trial court committed reversible structural error when it failed to instruct the jury that it could deliberate only when all 12 jurors were present.  Because this claimed error is not structural or manifest under RAP 2.5(a), we decline to consider it.

Article I, section 21 of the Washington State Constitution guarantees criminal defendants the right to a unanimous jury verdict.[24]  An essential part of that right is that the jury deliberations leading to a unanimous verdict be "'the

---

[22] 167 Wash. 420, 9 P.2d 355 (1932).

[23] Lampshire, 74 Wn.2d at 891 (In front of the jury, the trial court said "Counsel's objection is well taken.  We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel."); James, 63 Wn.2d at 74 (trial court's comment that codefendant would be discharged after testifying as the State's witness "providing that he testify fully as to all material matters within his knowledge" implied codefendant testified truthfully because he never returned to the courtroom); Bogner, 62 Wn.2d at 249-50 (trial court's statement "Don't you think we are getting a little ridiculous, or aren't we?" implied the judge believed that it was undisputable that a robbery had taken place); Vaughn, 167 Wash. at 424 (trial court's comment that "I dare say [the witness] wouldn't answer anything that he shouldn't" was a comment on the weight of the testimony and the credibility of the witness).

[24] State v. Woodlyn, 188 Wn.2d 157, 162-63, 392 P.3d 1062 (2017).

common experience of all [jurors].'"[25] We review de novo whether Griffith was denied his constitutional right to a unanimous jury.[26]

Under RAP 2.5(a)(3), an appellant may raise, for the first time on appeal, a manifest error affecting a constitutional right. In order to do so, he "must identify the constitutional error and show that it actually affected his or her rights at trial."[27] This requires the appellant to "make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial."[28] "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."[29]

In State v. Lamar, the trial court gave the pattern unanimity jury instruction, WPIC 1.04, on the first day of jury deliberations.[30] On the second day of deliberations, a juror fell ill, and the trial court substituted an alternate juror.[31] Rather than instructing the jury to start deliberations anew, the trial court instructed the remaining jurors to spend some time "reviewing" and "recapping" the past deliberations to bring the alternate juror "up to speed" and then to resume

---

[25] State v. Lamar, 180 Wn.2d 576, 585, 327 P.3d 46 (2014) (quoting People v. Collins, 17 Cal. 3d 687, 693, 552 P.2d 742 (1976)).

[26] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).

[27] Lamar, 180 Wn.2d at 583.

[28] Id.

[29] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

[30] 180 Wn.2d 576, 580, 327 P.3d 46 (2014).

[31] Id.

deliberations.[32] The Washington Supreme Court held that WPIC 1.04 was constitutional,[33] but the court's later instruction was manifest constitutional error because the instruction "affirmatively told the reconstituted jury not to deliberate together as is constitutionally required."[34] The court then determined the error was prejudicial because the jury is presumed to follow the trial court's instructions absent evidence to the contrary.[35]

Here, in its opening instructions to the jury, the trial court instructed:

> The presiding juror will preside over your discussions of the case, which are called deliberations. You will deliberate in order to reach a decision, which is called a verdict. Until you are in the jury room for those deliberations, you must not discuss the case with the other jurors or with anyone else or remain with the hearing of anyone discussing it.[36]

Before the parties' closing arguments, the trial court gave WPIC 1.04:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.[37]

---

[32] Id. at 580-81.

[33] Id. at 585.

[34] Id. at 582 (emphasis omitted).

[35] Id. at 586.

[36] RP (Oct. 25, 2016) at 863.

[37] CP at 82.

The court also instructed the jury on how to initiate and carry out the deliberative process and that each juror had a right to be heard.

Griffith argues that these instructions were insufficient to guarantee unanimity. He contends that the trial court should have informed the jury that any deliberation must always involve all 12 jurors and that the jury must suspend deliberations when a juror is absent. He argues that, in the absence of such instruction, "there is no basis to assume the verdicts rendered were the result of 'the common experience of all of [the jurors],' as required."[38]

We recently rejected the same argument in State v. Sullivan.[39] There, the court observed that RAP 2.5(a) precluded Kevin Sullivan "from raising this issue for the first time on appeal unless he c[ould] show that failure to provide the additional instruction [was] a 'manifest error affecting a constitutional right.'"[40] It further observed that "[f]or an error to be manifest, there must be evidence of 'actual prejudice' having 'practical and identifiable consequences [at] trial.'"[41] Noting that Sullivan offered "no evidence that the jury failed to deliberate as a

---

[38] Appellant's Br. at 36 (alteration in original) (quoting State v. Fisch, 22 Wn. App. 381, 383, 588 P.2d 1389 (1979)).

[39] 3 Wn. App. 2d 376, 415 P.3d 1261 (2018).

[40] Id. at 1262 (quoting RAP 2.5(a)(3)).

[41] Id. (second alteration in original) (quoting State v. O'Hara, 167 Wn.2d 91, 98-99, 217 P.3d 756 (2009)).

whole" and instead relied "entirely on speculation[,]" the court held that such speculation was "'insufficient to warrant review under RAP 2.5(a)(3).'"[42]

Here, Griffith admits that "the record here fails to show whether any deliberations occurred with less than all twelve jurors present in the jury room."[43] Because the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.[44] Therefore, we decline to address Griffith's argument for the first time on appeal.

Alternatively, Griffith argues that even if he cannot show actual prejudice, reversal is warranted because "[t]he failure to instruct a jury in a criminal trial how to achieve constitutional unanimity constitutes structural error for which reversal is required without the need to show actual prejudice."[45] A structural error necessarily renders a trial unfair and is thus subject to automatic reversal without considering whether the error was harmless.[46] Structural error has been found in a very limited class of cases involving constitutional error such as the complete denial of counsel, a biased trial judge, racial discrimination in the selection of a

---

[42] Id. at 1263 (quoting State v. St. Peter, 1 Wn. App. 2d 961, 963, 408 P.3d 361 (2018)).

[43] Appellant's Br. at 37.

[44] Sullivan, 415 P.3d at 1263 ("[W]ithout evidence to demonstrate that the jury did not deliberate as a whole, the asserted error is not 'manifest.'").

[45] Appellant's Br. at 37-38; see State v. Paumier, 176 Wn.2d 29, 36, 288 P.3d 1126 (2012) (RAP 2.5(a) does not apply in its typical manner where a structural error is involved).

[46] Neder v. United States, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

grand jury, denial of right to self-representation, and a defective reasonable-doubt instruction.[47] This case is not within that class. Because the unanimity instruction given here was held to be constitutional in Lamar, there was no structural error on these facts, and RAP 2.5(a) limits our review.

### *Statement of Additional Grounds*

In a statement of additional grounds, Griffith argues that the prosecutor committed misconduct during closing arguments, that his trial counsel was ineffective, and that the trial court abused its discretion by failing to admit hearsay evidence. None of these grounds merit reversal.

First, Griffith takes issue with several arguments made in the prosecutor's closing arguments, including specific statements on the credibility of Ricks, D.G., and Swaner, the lack of credibility of Dr. Herve, and Griffith's guilt. He argues that these statements improperly expressed the prosecutor's personal opinion of both Griffith's guilt and the credibility of the witnesses.

A prosecutor commits misconduct where he expresses a personal opinion as to the credibility of a witness or the guilt of a defendant.[48] Prosecutorial misconduct during closing argument can violate the accused person's right to a fair trial.[49] "To prevail on a claim of prosecutorial misconduct, the defendant must

---

[47] Id. at 8.

[48] State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014).

[49] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).

establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[50] To establish prejudice, the defendant must prove that "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'"[51] Because he did not object at trial, Griffith must show that the alleged misconduct was "'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[52]

Here, the prosecutor's arguments were not improper. He made no explicit statements of personal opinion and was within his authority to argue reasonable inferences from the facts concerning witness credibility.[53] Griffith also fails to establish that any of the challenged statements were incurably flagrant and ill intentioned. Any error could have been cured by a prompt instruction. And the jury was properly instructed that the State had the burden of proof.

Second, Griffith argues that his attorneys were ineffective because they failed to present impeachment evidence, call witnesses, and object to the prosecutor's allegedly improper closing arguments. To prevail on a claim of

---

[50] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[51] Id. at 443 (alteration in original) (quoting Magers, 164 Wn.2d at 191).

[52] Id. (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

[53] State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (prejudicial error will not be found unless it is clear and unmistakable that counsel is expressing a personal opinion); State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997) ("The prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury.").

ineffective assistance of counsel, Griffith must show both that defense counsel's representation was deficient and that the deficient representation prejudiced the defendant.[54] Where the claim is brought on direct appeal, this court will not consider matters outside the trial record.[55] Griffith has the burden to show deficient representation based on the record presented.

On this record, Griffith does not show that defense counsel's representation was deficient. With the exception of the transcript of Taylor's interview with D.G., which was presented to the jury for consideration, none of the impeachment evidence Griffith refers to is included in the record. And the record does not include what beneficial information the potential witnesses he identifies would have testified to. Therefore, Griffith has not met his burden show ineffective assistance of counsel. If Griffith wishes to raise issues that require evidence or facts not in the trial record, the appropriate means of doing so is through a personal restraint petition.[56] Additionally, as explained above, the statements of the prosecutor during closing argument were not improper, therefore, defense counsel's failure to object was not deficient.

Finally, Griffith argues that the trial court abused its discretion in suppressing testimony from Ricks that D.G.'s school principal reported Ricks to Child Protective Services (CPS) based on alleged injuries D.G. suffered and that

---

[54] State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

[55] McFarland, 127 Wn.2d at 335.

[56] Id.

Ricks denied she caused. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[57] The trial court held that Ricks's testimony as to what the principal told CPS was hearsay and could not be admitted because it would be offered for the truth of the matter asserted. Griffith does not establish that the principal's statements to CPS were offered for any purpose other than to prove the truth of the matter asserted. Because this evidence was hearsay, the trial court did not abuse its discretion by excluding it.

We affirm.

WE CONCUR:

---

[57] ER 801(c).