[No. 3280–2. Division Two. October 1, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MARTIN IRVING, *Appellant.*

*Stephen J. Henderson,* for appellant.

*Byron McClanahan, Prosecuting Attorney,* and *Gary Burleson, Deputy,* for respondent.

PETRIE, J.—James Martin Irving was convicted of the crime of second–degree rape committed upon Ms. A. In his appeal, he contends that the trial court erred by permitting another witness for the prosecution, Ms. B, to relate the details of another assault and attempted rape he committed upon Ms. B 5 years previously. We reverse and remand for a new trial.

Early in the morning of July 21, 1977, Ms. A entered a car in Shelton, Washington, driven by defendant. He drove to a secluded area, and the two engaged in a number of sexual acts, both normal and deviant, over a period of 2 hours. When defendant later drove to a service station, Ms. A got out of the car and reported the incident to the station attendant. Defendant sped from the station but was arrested later that day and was charged with first–degree rape. At trial, Ms. A testified that defendant twisted and pulled her hair, repeatedly used profane language, hit her in the face and breasts, and shoved her violently; she also testified that she was too frightened to successfully resist

and was forced to comply with defendant's demands. Defendant admitted picking up the victim, driving to the secluded area, and engaging in acts of sexual intercourse with Ms. A on July 21. Indeed, prior to trial, defendant and the prosecution stipulated in court that the intercourse occurred, but his defense was that the sexual activity was consensual.[1] At the commencement of the trial, the jury was informed of the stipulation and advised that the question they would have to decide was whether the sexual acts "took place by forcible compulsion." The jury returned a verdict of guilty to the lesser included offense of second–degree rape.

At trial, over defendant's strenuous objection, the State was permitted to call Ms. B, the victim of the earlier incident. Ms. B testified that she and a girlfriend were hitchhiking in eastern Washington in November 1972 when they were picked up by defendant. According to Ms. B, defendant drove off the main highway and began to "grab" her friend, who was in the front seat. The friend was able to get out of the car, and defendant turned his attentions to Ms. B. After a heated struggle during which defendant repeatedly used profane language, pulled Ms. B's hair, and clutched at her breasts, Ms. B, too, succeeded in escaping. Defendant pleaded guilty to attempted rape and assault charges which were filed after Ms. B reported the attack to authorities. (Incidentally, he does not challenge the prosecution's use of that conviction to attack his credibility.)

The trial court permitted this testimony because it was convinced that the two incidents were "substantially similar" and that evidence of the 1972 offense tended to prove a "necessary element of the [charged] crime . . . that is force." The court instructed the jury that they could consider evidence of the 1972 incident "only for whatever

---

[1]Both first– and second–degree rape require proof of forcible compulsion. RCW 9.79.170; RCW 9.79.180. Forcible compulsion is defined as: "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnaped." RCW 9.79.140(5).

bearing it may have, if any, upon the question of a common scheme, plan or method used in the commission of the crime in this case." On appeal, defendant argues that the trial court abused its discretion in admitting this evidence. We agree.

The thrust of the trial court's holding, as we understand it, and as the prosecution used it in arguing to the jury, is that the court determined there was evidence available to the trier of the facts which demonstrated two incidents substantially similar in nature and that, because of that similarity, evidence of the force used by the defendant in 1972 should be made available to the jury to permit them to infer the defendant used force in his admitted acts of sexual intercourse in 1977. In short, evidence by Ms. B that she resisted defendant's forceful advances in 1972 may be considered as supportive of Ms. A's testimony that she, also, was forced to commit and did not consent to acts of intercourse with defendant in 1977. Thus, the evidence was admitted to prove substantively that defendant forced the acts and that Ms. A did not consent to them.

█ In order to analyze the issue on appeal we must first take a closer look at the court's instruction. We note initially, that the expression "a common scheme, plan or method" must.be broken into its two component parts. The concept of a common scheme, plan (or design), requires that the former act or acts should indicate, by common features, a scheme, plan, or design which tends to show that the scheme, plan, or design was carried out by doing the act charged. 2 J. Wigmore, *Evidence* § 357, at 266 (3d ed. 1940). In other words, evidence of other offenses is sometimes admissible to prove a common plan or scheme embracing the commission of several crimes, of which that charged is a part.

Under no stretch of the imagination can we visualize that the 1977 acts were carried out as a part of a scheme or plan developed in 1972. Proof that Irving attempted to commit a forceful rape upon one woman in 1972 is not proof that he then had any design or intent to perpetrate a rape almost 5

years afterwards upon another woman whom he had never seen or heard of, at a place several hundred miles away.

■ The other component of the court's instruction is that the "method" of committing the two crimes was so similar that proof of his commission of one provides a logical basis for inferring that he probably committed the other. This concept is usually described as a similarity of the modus operandi. *See State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970). Under this principle, the method employed in the commission of both crimes is so unique that mere proof that an accused committed one of them creates high probability that he also committed the act charged. In order to utilize this principle the facts of both crimes must be "so similar and peculiar in nature as to show a modus operandi." *State v. Whalon, supra* at 792. Professor Meisenholder describes the basic requirement as:

> Mere similarity of crimes will not justify the introduction of other criminal acts under the rule. There must be something distinctive or unusual in the means employed in such crimes and the crime charged.

(Footnotes omitted.) 5 R. Meisenholder, Wash. Prac. § 4, at 13 (1965).

Furthermore, the primary purpose of the modus operandi principle is to corroborate the *identity* of the accused as the person who likely committed the offense charged. *State v. Whalon, supra.* In the case at bench, Irving's identity as the perpetrator of the sexual acts with Ms. A was conclusively established by his stipulation to that fact. Hence, identity was not a necessary item in the prosecution's burden of proving that he committed the acts in the *manner* charged.

■ We perceive the true test for the admissibility of evidence of other offenses is whether it is *relevant and necessary* to prove an essential ingredient of the crime charged. *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952). Nevertheless, when that relevancy is reached merely by demonstrating the accused's bad character through his propensity to commit similar crimes, evidence of the other

offenses is ordinarily inadmissible. In this latter case, the peg of relevancy is said to be obscured by the dirty linen hung upon it. *See* J. Stone, *The Rule of Exclusion of Similar Fact Evidence: England,* 46 Harv. L. Rev. 954, 983 (1933). *See also* ER 404(b) effective April 2, 1979.

In *Goebel,* the court noted points of "marked similarity" in the description of three rapes committed against different women within a 2–month period. Goebel confessed the commission of one of these rapes to a police officer, but he was charged only with the commission of the other two rapes. The points of similarity in *Goebel* were slightly more "marked" than the "similarities" in the case at bench. The court held that Goebel's written confession was admissible as tending to prove the identity of the perpetrator of the crimes charged. Nevertheless, in dictum, the court declared:

> These points of similarity do not tend to prove that the complaining witnesses involved in counts I and III did not consent to the assaults; nor does such similarity make the exhibit [Goebel's written confession] admissible for the purpose of showing a lustful disposition.

*State v. Goebel, supra* at 23.

For purposes of this appeal we will assume the trial court properly exercised discretion in concluding that the two episodes were sufficiently similar to establish a modus operandi. Nevertheless, the jury should not have been advised of the *legal basis* on which the trial court admitted the evidence. Rather, if any instruction was appropriate, the jury should have been advised quite openly that they might consider the evidence of the 1972 episode solely for whatever bearing it might have, if any, on whether the 1977 sexual activity took place because defendant's application of physical *force* overcame Ms. A's resistance. Conceivably, that was implied by the actual instruction given. Most certainly, it was the use made of the instruction by the prosecution.

The issue on appeal then becomes: In the absence of a necessity to identify defendant as the perpetrator of the

crime, were the details of the 1972 episode admissible to support Ms. A's version of the 1977 episode?

The dictum in *Goebel* appears to place this state among the majority of jurisdictions and the better reasoned decisions which hold that, when rape is the crime charged, detailed evidence of the defendant's forceful rape or attempted rape of another woman on a prior occasion is inadmissible as substantive evidence to corroborate the prosecutrix's claims of defendant's use of force and her lack of consent. *Lovely v. United States,* 169 F.2d 386 (4th Cir. 1948); *Alford v. State,* 223 Ark. 330, 266 S.W.2d 804 (1954); *Larkins v. State,* 230 Ga. 418, 197 S.E.2d 367 (1973); *Meeks v. State,* 249 Ind. 659, 234 N.E.2d 629 (1968); *State v. Sauter,* 125 Mont. 109, 232 P.2d 731 (1951); *State v. Beaulieu,* 116 R.I. 575, 359 A.2d 689 (1976); *Jackel v. State,* 506 S.W.2d 229 (Tex. Crim. 1974). *Contra, Dean v. State,* 277 So. 2d 13 (Fla. 1973); *Fisher v. State,* 57 Ala. App. 310, 328 So. 2d 311 (1976). In other jurisdictions, where evidence of a criminal intent to rape, as opposed to a reasonable and bona fide belief that a prosecutrix consented, is a necessary element of the crime of rape, detailed evidence of other offenses is admissible even when the accused admits the acts charged and denies only lack of consent. *People v. James,* 62 Cal. App. 3d 399, 132 Cal. Rptr. 888 (1976). Also, evidence of other offenses is admissible when offered for the unique purpose of proving an accused attempted to orchestrate events in order to make proof of nonconsent difficult. *People v. Oliphant,* 399 Mich. 472, 250 N.W.2d 443 (1976).

We accept the dictum in *Goebel* and hold the trial court abused its discretion in permitting detailed evidence of the 1972 episode. In the context of this case, that evidence was extremely prejudicial to defendant. It is not without regret that we remand this cause for new trial. Nevertheless, the issue goes to the very heart of fairness and justice in criminal trials. We cannot conscientiously sustain a verdict which may well have been influenced by such prejudicial testimony.

Reversed and remanded for new trial.

PEARSON, C.J., and JOHNSON, J. Pro Tem., concur.

Reconsideration denied October 29, 1979.

Review denied by Supreme Court January 18, 1980.