12-0189 – *State of West Virginia v. Charles Edward Bruffey*

**FILED**

June 21, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Chief Justice, dissenting:

In reaching its decision, the Majority so broadens the exceptions to the improper use by the State of Rule 404(b)[1] character evidence as to render the protections of Rule 404(b) a nullity. Convictions may now occur not because the State must prove its case with positive proof, but because non-specific similarities between occurrences may be introduced to predispose a jury to convict based on character evidence rather than proper, actual proof. I therefore dissent.

The Majority posits that evidence of the later February 26, 2010, uncharged bank robbery is admissible character evidence to prove Mr. Bruffey's involvement in the earlier December 23, 2009, charged bank robbery. The Majority relies on the "plan" and "identity" exclusions found in Rule 404(b). In this case, both are evidence of the *modus operandi*: "a pattern of criminal behavior so distinctive that investigators attribute it to the work of the same person." Black's Law Dictionary 1026 (8th ed. 2004); *see also United States v. Goodwin*, 492 F.2d 1141, 1154 (1974) ("The 'identity' exception . . . is used either in conjunction with some other basis for admissibility or synonymously with *modus operandi*." (Footnote omitted).); *State v. Coe*, 684 P.2d 668, 672 (1984) ("Where prior acts are sought to be admitted to show modus operandi, 'the primary purpose . . . is

_____

[1] W. Va. R. Evid. 404(b).

1

to corroborate the *identity* of the accused as the person who likely committed the offense charged.'" (quoting *State v. Irving*, 601 P.2d 954 (1979))).[2] With regard to the admissibility of *modus operandi* evidence, the Court has said:

> Other-crime evidence may be admitted if the evidence of other crimes is so distinctive that it can be seen as a "signature" identifying a unique defendant, such as the infamous Jack the Ripper . . . . [E]vidence of the commission of the same type of crime is not sufficient on this theory unless the particular method of committing the offense, the *modus operandi* (or m.o.), is sufficiently distinctive to constitute a signature. Other-crimes evidence is not permissible to identify a defendant as the perpetrator of the charged act simply because he or she has at other times committed the same garden variety criminal act . . . .
>
> 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.22[5][c], at 404–121 to 404–122 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2001).

*State v. McDaniel*, 211 W. Va. 9, 13, 560 S.E.2d 484, 488 (2001). Furthermore, "[w]hen Rule 404(b) evidence is offered to establish modus operandi, the proffering party must make a showing of substantial similarity and uniqueness to establish the proffered evidence's probative value." *Id.*; *see also United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) ("Prior acts or crimes can be admitted to show identity, provided they are of sufficient distinctive similarity with the charges in the indictment to create a pattern or

---

[2] The exceptions in Rule 404(b) of the West Virginia Rules of Evidence are identical to the exceptions in Rule 404(b) of the Federal Rules of Evidence. *See generally State v. Willett*, 223 W. Va. 394, 674 S.E.2d 602 (2009) (Ketchum, J., concurring).

modus operandi." (Internal quotations omitted).); *Goodwin*, 492 F.2d at 1154 ("A prior or subsequent crime or other incident is not admissible for this purpose merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused."); *People v. Ewoldt*, 867 P.2d 757, 770 (Cal. 1994) ("For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts."); *Traish v. Commonwealth*, 549 S.E.2d 5, 13 (Va. App. 2001) ("[E]vidence of other criminal conduct is admissible to prove the perpetrator's identity when some aspects of the [other criminal conduct] are so distinctive or idiosyncratic that the fact finder reasonably could infer that the same person committed both crimes." (Internal quotations omitted).).

Based on the foregoing controlling precedent, for the evidence at issue in the case *sub judice* to be admissible under the exceptions of Rule 404(b), the evidence of the charged and uncharged crimes must be sufficiently distinctive to constitute a clear signature. Here, it does not.

To prove identity, the Majority relies on the following facts: (1) the robberies involved the same bank; (2) the robberies were both committed by a white male with blue eyes; (3) the robberies were committed by a person covering his face with a scarf; (4) the robber in both crimes told the teller not to use dye packs or bait money; (5) a vehicle matching the description of Mr. Bruffey's vehicle was seen in the vicinity of the

3

bank; and (6) the robber in the charged crime stated that he had lost his job, and Mr. Bruffey made comments to police that he had lost his job. Absolutely none of these facts, in whole or in part, is the least bit distinctive.

First, the fact that the same bank was robbed twice does not imply that the robbery was conducted by the same person. It is absolutely within the realm of reasonable possibilities that the second robbery was committed two months later because the bank, after the first successful robbery, could be perceived as an easy target.

Second, white males with blue eyes are not the least bit unique in West Virginia. According to the 2000 United States Census, 98.8% of the residents of Fort Ashby, West Virginia, are white. About half are white males. I presume that more than a handful of these white males have blue eyes.[3]

Third, it is not distinctive that a robber would cover his or her face with a scarf. Both robberies took place in the wintertime. Further, while *not* wearing a facial covering might be distinctive, when was the last time anyone robbed a bank without attempting to avoid identification? Also, the facts do not describe any feature of either scarf that might indicate that they are one and the same. In other words, the scarves were also not distinctive.

---

[3] I cautiously observe that two-fifths of this Court consists of white males with blue eyes.

4

Fourth, it is not unique that a bank robber would instruct a teller not to include bait money or dye packs in the take. So common is this instruction in bank robberies that references to bait money or dye packs are now common in movies depicting bank robberies. *See, e.g.*, *Out of Sight* (Universal Pictures 1998) ("I don't want dye packs. I don't want bait money."); *Point Break* (JVC Entertainment Networks 1991) (discussing removing dye packs from money); *Raising Arizona* (Circle Films 1987) (depicting a dye pack exploding). My guess is that most bank robbers would have at some point or another watched a movie about bank robbing before attempting his or her own robbery.

Fifth, the identification of the purple vehicle before both crimes is the most tenuous of the connections made by the Majority. On the day the charged robbery took place, a purple vehicle was seen 300 feet—the length of a football field—away from the bank. The crimes took place in Fort Ashby, West Virginia, a town with a population, according to the 2010 United States Census, of 1,380. Fort Ashby is situated on a United States highway between Romney, West Virginia, and Cumberland, Maryland. In such a small town, is it any surprise that there might be a purple car and that the purple car might be seen within a football-field's length from the bank on *any* day?

Sixth, it is not distinctive that both the robber in the first robbery and Mr. Bruffey have lost their jobs. Is the "great recession" of 2008 onward so easily forgotten? During the last quarter of 2009 and the first quarter of 2010, West Virginia's U-6

unemployment rate was 14.3, slightly less than the 16.7% national rate of U-6 unemployment, according to the Bureau of Labor Statistics. In other words, at least 1 of 7 people in West Virginia was unemployed. Distinctive? I think not.

None of the facts regarding the later uncharged robbery, when compared to the facts of the charged robbery, is distinctive—even when considered together—so as to indicate that the same robber committed both robberies.

Of the remaining evidence on which the Majority relies—the FBI handwriting analysis and the cigarette butt DNA—only the DNA evidence should be admissible. It could show that Mr. Bruffey was present in Fort Ashby within 300 feet of the bank on the day of the robbery. The FBI handwriting analysis, however, is not relevant to the proceedings dealing with the charged robbery. The handwriting analysis only indicates that Mr. Bruffey may have committed the second, uncharged robbery. In no way does it link him to the first robbery.

*United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977), illustrates the role of 404(b) evidence in the context of a bank robbery. In that case, the government sought the admission of an uncharged bank robbery in Pennsylvania to prove, via modus operandi, that the defendant committed the charged bank robbery in Florida. The government argued that ten similarities between the robberies warranted admission of the evidence under Rule 404(b):

6

> (1) [B]oth crimes were bank robberies, (2) perpetrated by Coffie and Myers, (3) between two and three o'clock in the afternoon. In both robberies the victimized bank was (4) located on the outskirts of a town, (5) adjacent to a major highway. In both robberies the participants (6) used a revolver, (7) furnished their own bag for carrying off the proceeds, and wore (8) gloves and (9) masks crudely fashioned from nylon stockings. Finally, (10), in one of the banks, two women employees were present; in the other, five women employees were present.

*Myers*, 550 F.2d at 1046. The Fifth Circuit Court of Appeals concluded that none of these similarities was distinctive enough to warrant admission under the exception of Rule 404(b):

> There are several flaws in this analysis. To begin with, the assertion that Coffie and Myers robbed both banks begs the question which the evidence of the uncharged crime is supposed to help us to answer: whether Myers perpetrated the Florida robbery. Moreover, the number and gender of employees present could only be a circumstance controlled by the robbers if they timed the robbery to coincide with the presence of such employees. Thus the time of the robbery and the presence of only a few female employees really constitute only a single common feature. Equally significant is the fact that *each of the eight remaining similarities is a common component of armed bank robberies. When they are considered as a whole, the combination still lacks distinction.* The presence of a marked dissimilarity—that the charged crime was perpetrated by a lone gunman, while the uncharged crime was committed by two armed men—further undermines the force of the inference of identity. An early afternoon robbery of an outlying bank situated on a highway, by revolver-armed robbers wearing gloves and stocking masks, and carrying a bag for the loot, is not such an unusual crime that it tends to prove that one of the two individuals involved must have been the single bandit in a similar prior robbery. The probative value of this evidence does not

> outweigh its substantial prejudicial effect. It was improperly
> admitted.

*Id.* at 1046 (footnote omitted) (emphasis added). The facts of the case *sub judice* are equally inadmissible.

Based on the foregoing, I believe that the circuit court abused its discretion by allowing evidence from the later uncharged robbery to be admitted at the trial of the earlier charged robbery. The factual similarities between the robberies were so unremarkable that the circuit court could not have reasonably concluded that Mr. Bruffey committed both crimes. Admission of the evidence of the uncharged robbery did nothing but predispose the jurors to conclude that because Mr. Bruffey may have committed the later uncharged robbery, he also committed the earlier charged robbery. This is exactly the type of vague and highly prejudicial character evidence Rule 404(b) is intended to exclude.

In finding that the evidence of the uncharged robbery was admissible in the trial of the charged robbery, I believe the Majority has committed clear error and has established unfortunate precedent. Therefore, I dissent.