IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78704-7-I (Consolidated with No. 78830-2-I) |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LYNELL AVERY DENHAM, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Lynell A. Denham was convicted of burglary in the second degree and trafficking in stolen property in the first degree after a bench trial. Police were granted two separate search warrants pursuant to the investigation of the case; one for Denham's residence and another for his cell phone records and data. On appeal, Denham challenges the sufficiency of the affidavits in support of both search warrants, the admission of evidence from a recorded interview regarding prior burglaries and argues defense counsel was ineffective. In a Statement of Additional Grounds (SAG), Denham also raises sufficiency challenges and an equal protection claim, alleging selective prosecution. We find cumulative error based on improper admission of evidence under ER 404(b) and the unconstitutional warrant to search Denham's cell phone records and data. Accordingly, we reverse and remand.

FACTS

In November 2016, Frank Mallinak arrived at his shop, Mallinak Design Jewelers, in Kirkland to find that his complex security system had been bypassed and the safe drilled out. Over six hundred pieces of jewelry and loose stones were stolen; the total value of which was estimated between $200,000 and $300,000. One of the stones was a 5.29 carat diamond valued at $30,000 which had a serial number etched into the stone and an accompanying Gemological Institute of America (GIA) certificate. The GIA certificate described the stone in detail and is used as title to the gem within the industry. It was stolen along with the jewelry and stones.

In the days following the burglary, Lynell Denham sold various pieces of jewelry throughout the region. Several of the pieces involved in these transactions were identified by Mallinak as coming from the burglary of his store and later returned to him by police. Denham sold a 5.29 carat diamond with the same serial number as the one from the burglary to Andy Le at Thien Phuoc Jewelry for $29,000 and presented the GIA certificate as proof of ownership. He also provided his identification to Le as a part of the transaction. This diamond sale was the sole basis for the trafficking in stolen property in the first degree charge. Le later sold the diamond to another jeweler and it was then sold to three other jewelers before it was recovered pursuant to the criminal investigation. Soon after the diamond sale to Le, Denham bought a Range Rover with a $9,000 cash down payment. Both Le and the car dealership staff remembered Denham wearing distinctive jewelry during their respective interactions with him.

In early December 2016, Denham reported to his community corrections officer (CCO) pursuant to his Department of Corrections supervision. He drove the Range Rover to the meeting and was observed by his CCO wearing various pieces of jewelry. The CCO inquired about the new vehicle and the jewelry; Denham responded that his family had come into some money. Later that month, police obtained warrants to search Denham's home and obtain records from two cell phones associated with him, including location data. During the search of Denham's home, police found new head-lamps, an empty power drill box, wire clamps, ads for jewelry shops, cutting oil, and schematics for various safes. The cell phone location data obtained pursuant to the search warrants showed that one of Denham's cell phones hit off the cell tower located near Mallinak Design Jewelers once on the night of the burglary and twice again the day after. The cell tower is located near several thoroughfares and Interstate 405, and the record provides that the maximum range of cell towers is 2½ miles.

In October 2017, Denham was charged with burglary in the second degree and trafficking in stolen property in the first degree. Denham's defense to the burglary was identity and good faith claim of title as to the trafficking charge. He wrote a letter to Mallinak after charges were filed and claimed he purchased the stones and jewelry at a swap meet in Tacoma and was unaware that they were stolen.

Denham had previous federal and state convictions for burglarizing banks. Denham participated in a lengthy video-recorded interview with law enforcement pursuant to an earlier criminal investigation that resulted in convictions in 2008. In

that interview, he detailed his unique and highly technical skills with regard to overcoming complex security systems. The State sought admission of the convictions and interview in the instant case for the purpose of "identity, knowledge, as well as MO [modus operandi] or signature evidence." Defense filed a written motion objecting to their admission and renewed those objections at oral argument on various pretrial motions. The trial judge excluded the prior convictions themselves, but admitted the recorded interview "as to the knowledge" after expressly rejecting admissibility as to modus operandi. Denham was found guilty on both charges after a bench trial. Denham timely appealed.

ANALYSIS

I.      Sufficiency Challenges to the Search Warrants

Denham challenges the search of his residence and cell phone information, arguing that each search constituted a violation of both the Fourth Amendment and article I, section 7 of the Washington State Constitution. "When parties allege violation of rights under both the United States and Washington Constitutions, this court will first independently interpret and apply the Washington Constitution in order, among other concerns, to develop a body of independent jurisprudence, and because consideration of the United States Constitution first would be premature." City of Seattle v. Mesiani, 110 Wn.2d 454, 456, 755 P.2d 755 (1988). The federal constitution provides a minimum protection against unreasonable searches by the government, while greater protection may be available under our state constitution. State v. Young, 123 Wn.2d 173, 178, 867 P.2d 593 (1994).

Therefore, we focus our analysis on the state constitution to determine whether there is a violation.

Though Denham failed to raise these particular arguments in the trial court regarding the sufficiency of the nexus in the warrant applications, he is entitled to present the issue for the first time on appeal under RAP 2.5(a)(3) as manifest constitutional error. Manifest constitutional error analysis first requires an appellant to make a plausible showing that the asserted error had practical and identifiable consequences in the trial of the case. State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2019). Denham challenges the search of both his home and cellular data which implicates both the Fourth Amendment and article I, section 7 of the Washington Constitution. If either warrant was erroneously issued, there would be practical and identifiable consequences at trial since the evidence resulting from the improper search should have been suppressed. Denham has made the requisite preliminary showing and we take up his challenges to each warrant.

The validity of a search warrant is reviewed for abuse of discretion, giving great deference to the issuing judge or magistrate. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, the trial court acts in an appellate-like capacity at a suppression hearing where it reviews only the four corners of the affidavit to determine whether probable cause exists. Id. Deference is provided to the issuing magistrate's determination, yet we review de novo the assessment of probable cause determined by the trial court at the suppression hearing as a legal conclusion. State v. Dunn, 186 Wn. App. 889, 896, 348 P.3d 791 (2015). Denham formally challenged the search warrants in the trial court with a pretrial motion to

suppress which was denied, therefore we engage in de novo review of the court's determination of probable cause.

Under a de novo standard, this court is tasked with determining whether the qualifying information as a whole amounts to probable cause. Id. We limit this review to only the information that was provided to the issuing judge. State v. Olson, 73 Wn. App. 348, 354, 869 P.2d 110 (1994). "A search warrant should be issued only if the application shows probable cause that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched." Neth, 165 Wn.2d at 182.

Probable cause may not be based on blanket inferences and generalities. Dunn, 186 Wn. App. at 897. "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." State v. Thien, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched." State v. Goble, 88 Wn. App 503, 509, 945 P.2d 263 (1997). "In determining whether there is a nexus between the evidence at issue and the unlawful search, a court must evaluate the facts and circumstances of the particular case." State v. McReynolds, 104 Wn. App 560, 571, 17 P.3d 680 (2000).

A.    Search Warrant for Denham's Residence

Denham asserts that the affidavit submitted in support of the application for the search warrant for his home failed to establish a nexus between the criminal activity suspected and the place to be searched, his residence.  We review de novo whether a search warrant meets the particularity requirement but we interpret warrants "in a common sense, practical manner, rather than in a hypertechnical sense." State v. Perrone, 119 Wn.2d 538, 549, 834 P.2d 611 (1992).  The affidavit submitted in support of the application for the search warrant primarily focuses on establishing probable cause for the criminal activity, discussing the burglary techniques and the sale of jewels at various pawn shops including the sale of the 5.29 carat diamond.  These all go to probable cause that Denham was engaged in criminal conduct.  At the point the warrant was being assessed, Denham had conducted several sales of jewels from Mallinak's business.  A sufficient nexus existed to establish that Denham was engaged in trafficking in stolen property.

The following statement in the affidavit was offered as support for the search of his residence:

> Mallinak had hundreds of pieces of jewelry stolen and only a small number are known to be recovered. It would be difficult to traffic/sell such a large quantity of jewelry quickly, thus it would be reasonable to suspect that he is storing the jewelry at his residence. Both probation agents informed me that Denham's property contains the main house, a guest house, several structures and numerous vehicles. All of these are great places that Denham could hide the stolen jewelry and tools used.

Additionally, the affidavit provided that multiple shop owners had seen Denham with additional jewels and pieces of jewelry he had hoped to sell to them.  This

- 7 -

information provides the requisite nexus between the criminal activity alleged and the items to be seized.

Case law examining search warrants for evidence that is not inherently incriminating, like the jewelry and stones at issue here, suggests that it may be reasonable for the issuing magistrate to reach the determination that such evidence would likely be stored openly at one's home, thus providing the necessary nexus between the item to be seized and the place to be searched. State v. Condon, 72 Wn. App. 638, 643-44, 865 P.2d 521 (1993); State v. Herzog, 73 Wn. App. 34, 55-56, 867 P.2d 648 (1994); Dunn, 186 Wn. App. at 898-99. State v. Condon is an example of such a case, where a warrant was issued for the defendant's home to locate the weapon used in a murder wherein he was identified as a suspect. 72 Wn. App. at 641. In Condon, the evidence recovered under the warrant was a shotgun and twelve-gauge shells located at the defendant's residence. Id. Firearms and ammunition are not inherently criminal and may be possessed for a variety of lawful uses. The court noted the affidavit "established a strong likelihood that Condon, and no one else, committed the crime." Id. at 643. The court went on to explain that "when the object of a search is a weapon used to commit a crime, it is reasonable to infer that the weapon is located at the perpetrator's residence." Id. at 644.

We find this analysis useful. Like the affidavit in Condon, the information provided in the affidavit about the jewelry sales established a likelihood that Denham committed the crime of trafficking in stolen property. Further, Denham's home was searched for the means of the crime, the property being trafficked,

similar to the means of the crime sought in Condon, the murder weapon. The jewelry and stones at issue here, like the shotgun and shells in Condon, are not inherently criminal; they are relatively small, valuable and can be easily concealed. A judge could reasonably infer from any of these facts that Denham would desire to store them in a safe location, such as his residence. See Id.; see also Herzog, 73 Wn. App. at 55-56. There was a reasonable probability that Denham was engaged in trafficking in stolen property and there was a sufficient nexus that evidence of the crime, such as the jewels, would be stored in Denham's residence. As such, we find that there was a sufficient basis for the issuance of the search warrant for Denham's residence.

B.      Search Warrant for Denham's Cell Phone Records and Data

In order for a warrant to be constitutionally valid it must not only be supported by probable cause, but also tie the facts known to the State to the specific evidence it seeks to obtain. State v. Phillip, __ Wn. App.2d __, 452 P.3d 553, 561 (2019)

Cell phone data "represents a new frontier in police investigative tactics." Phillip, 452 P.3d at 554. The Supreme Court of the United States has acknowledged that cell phones store vast amounts of private data which effectively allows for the ability to track individuals over extended periods of time and collect personal contacts. Riley v. Cal., 573 U.S. 373, 394-96, 134 S. Ct. 2473 (2014). Our state's supreme court has recognized, "[h]istorical and real-time CSLI, like text messages, reveal an intensely intimate picture into our personal lives." State v. Muhammad, 194 Wn.2d 577, 589, 451 P.3d 1060 (2019).

Carpenter v. U.S. delved into the question of privacy interests in cell phone data, specifically cell-site location information (CSLI), when it is arguably shared with the cell phone provider by permission of the owner or user. __ U.S. __, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). The Court in Carpenter held:

> We decline to grant the state unrestricted access to a wireless carrier's database of physical location information. In light of the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection.

Id. at 2223. Even more directly, the Court explained "before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant." Id. at 2221. The Washington Supreme Court also declared an individual's privacy interest in CSLI under the state constitution in State v. Muhammad, though that case focused on law enforcement's real-time cellphone ping, as opposed to obtaining records from a wireless carrier. 194 Wn.2d at 589-90. "The ability of law enforcement to pinpoint any cell phone user's location at any moment would intrude on privacy in the same way as allowing police to listen in on an ongoing phone call or to peruse a text message conversation." Id. As such, the standard nexus requirements for search warrants must be met when the government seeks access to this private cell phone data.

Here, the nexus between the crime and the place or item to be searched is lacking. The affidavit in support of the search warrant for the cell phone records states, "[o]btaining the records from Denham's cellular phone service providers, I believe would assist in providing information on his location during the above listed

crimes." This broad, speculative language generally seeking "information on his location" conflicts with our supreme court's holding that "[g]eneral, exploratory searches are unreasonable, unauthorized, and invalid." Thein, 138 Wn.2d at 149 (citing State v. Helmka, 86 Wn.2d 91, 542 P.2d 115 (1975)). The affidavit for the warrant establishes that the two cell phones for which records were sought belonged to Denham, based on the fact that he provided them to his probation officers and utilized them during the transactions with jewelry and pawn shops. The original affidavit for the warrant for Denham's residence, which is incorporated by reference in the application for the cell phone warrant, mentioned that Denham had used the cell phones to contact two of the jewelers to whom he sold some of the items from Mallinak's business.

However, the police sought the records from Denham's phones, specifically the CSLI, for the crime of burglary. We reject the notion that the CSLI would be necessary to prove the crime of trafficking given the evidence already known to police. Even if it were, the affidavits fail to provide any specific nexus between the CSLI and the trafficking investigation. The affidavits do not establish a sufficient nexus between the crime of burglary and the thing to be searched, Denham's cell phone records, particularly as the State did not establish identity or even a basic description of the person or persons involved in the burglary.

While the State established that Denham had been selling jewels from Mallinak's business taken in the burglary, it failed to establish that Denham had either of the cell phones in question in his possession on the night of the burglary. The affidavit prepared by law enforcement relies on general statements indicating

- 11 -

that "the majority of Americans possess and use cellular telephones, and that most of those keep the phones within their reach at all times," but offers no specific facts as to Denham or the use of cell phones in the burglary at issue here. These are precisely the sort of blanket inferences and generalities that, without additional specific facts, our courts have declared insufficient to establish the requisite nexus for the issuance of constitutionally valid search warrants. Thein, 138 Wn.2d at 147-49.

The Washington case most analogous to Denham's is State v. Phillip, 452 P.3d at 553. We note that this published opinion focuses on a subpoena for cell phone records, but incorporates significant portions of the previous unpublished opinion in the same case which dealt with a search warrant for cell phone location data. Phillip lived in Portland, Oregon and was suspected of a murder in Auburn, Washington. Id. at 555. The State had identified Phillip as the primary suspect of the murder due to his alleged jealously of a new relationship between the victim and Phillip's former girlfriend. Id. at 555-57. The factual bases provided in the affidavit for obtaining the warrant for the defendant's CSLI were only text messages indicative of possible jealousy and the fact Phillip did not want to discuss whether he had ever traveled to Auburn with police. Id. at 557. This court rejected the assertion that the State had established a sufficient nexus in the affidavit to show that evidence of the crime would be found in Phillip's cell phone records; in other words, there was no nexus between the suspected crime and place to be searched. Id. at 557 (quoting State v. Phillip, No. 72120-8-I, slip op. at 9-12 (Wash. Ct. App. Aug. 29, 2016) (unpublished), http://www.courts.wa.gov/opinions/).

Here, like in <u>Phillip</u>, the State relied on a chain of inferences to support its conclusion that Denham likely committed the burglary and likely possessed one of the cell phones in question at the time of the crime. At oral argument, the State suggested the warrant was valid because the court found probable cause that Denham was engaged in the criminal activity alleged. This is not sufficient under case law. "To be constitutionally valid, a warrant must not only be supported by probable cause but it must also specifically tie the facts known to the State to the specific evidence it seeks obtain" <u>Id.</u> at 561. The search warrant application at issue here fails in this regard because, while the State demonstrated a connection between Denham and the trafficking allegation, it had scant evidence linking him to the burglary at the time it sought the search warrant.

There was no conclusive fingerprint or DNA evidence found at the scene of the burglary and the specific method of entry differed from those associated with Denham's past burglary convictions. There was no security footage or eyewitness to suggest an approximate physical description of the suspect to compare against Denham. Additionally, there was no evidence to suggest that there were other accomplices or co-conspirators with whom the perpetrator of the burglary would have necessarily been communicating. The application for the search warrant for Denham's cell phone records was insufficient as it failed to provide specific information demonstrating a nexus between Denham, the criminal act, the information to be seized and the item to be searched. We reverse the trial court's ruling on Denham's motion to suppress as to the warrant for his cell phone records.

II.     Admission of ER 404(b) Prior Bad Act Evidence

Denham next challenges the admission under ER 404(b) of the video-recorded interview from his earlier criminal investigation.  Admissibility rulings based on ER 404(b) are reviewed by this court for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).  A trial court abuses its discretion if the court's decision is unreasonable or based on untenable grounds or reasons, such as a misconstruction of a rule. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

"Under ER 404(b), evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith." State v. Grant, 83 Wn. App. 98, 105, 920 P.2d 609 (1996).  Prior bad acts may be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).  "The State must meet a substantial burden when attempting to bring in evidence of prior bad acts under one of the exceptions to this general prohibition." State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).  "If [the prior bad act] is admitted for other purposes, a trial court must identify that purpose and determine whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged." Powell, 126 Wn.2d at 258 (alterations in original).

> To admit evidence of other wrongs, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002); See also Gunderson, 181 Wn.2d at 923.

In the present case, the evidence admitted was a recording of Denham's statements regarding his skills and how he conducted the burglaries for which he was convicted in 2008. Neither party disputes that the prior bad conduct occurred or that the evidence itself is Denham's admission as to how the prior burglaries were conducted; step one is clearly met.

As to step two, the State argued for the evidence of prior bad acts to be admitted under numerous theories (knowledge or identity/modus operandi). The court rejected the State's claim that Denham's statements about the prior burglary could be allowed in for modus operandi which requires a more stringent test. See Thang, 145 Wn.2d 630. The court ultimately ruled that the statements were admitted for the purpose of knowledge. The second step is satisfied; identification of the purpose for which the evidence is to be admitted.

As to the third step, to determine whether the evidence is relevant to prove an element of the crime charged, the record before us is not as clear. Relevant evidence is defined as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. This evidence was not used to prove the elements of trafficking in stolen property in the first degree, so we focus our analysis on its applicability to the burglary charge. Burglary in the second degree requires 1) unlawfully entering or remaining in a building other than a vehicle or dwelling, 2) with intent to commit a crime against

persons or property therein. RCW 9A.52.030(1). Here, Denham has the more compelling argument; that the evidence was improperly admitted as to intent, which is distinct from motive, since knowledge would not be relevant to the burglary charge. He suggests as an alternative that the evidence was being offered to prove identity (which is inherently intertwined with modus operandi)[1] which the court explicitly rejected.

The court in Powell explained intent in the context of ER 404(b) evidence: "prior misconduct evidence is only necessary to prove intent when intent is at issue or when proof of the doing of the charged act does not itself conclusively establish intent." 126 Wn.2d at 262. In Powell, the Supreme Court approved of the admission of evidence of prior assaults and quarrels to prove motive as to the second degree murder charge, but rejected its admission to prove intent. Id. at 257, 260, 262. The Supreme Court noted that intent was never disputed and therefore the Court of Appeals properly held that the evidence was not necessary for that purpose and that it had been improperly admitted to prove intent. Id. at 262.

In Denham's case, it is unclear how the evidence of his knowledge is necessary, unless it went to identity, when no evidence as to skill was required to prove the crime. Knowledge is not an element of the burglary charge.[2] Denham's argument that the court must have then ultimately used it for identity is persuasive,

---

[1] "Where prior acts are sought to be admitted to show modus operandi, 'the primary purpose . . . is to corroborate the identity of the accused as the person who likely committed the offense charged.'" State v. Coe, 101 Wn.2d 772, 777, 684 P.2d 668 (1984) (emphasis in original) (quoting State v. Irving, 24 Wn. App. 370, 374, 601 P.2d 954 (1979)).

[2] The court admitted and relied on the evidence to prove the burglary charge not trafficking.

particularly when considered in light of the oral and written rulings on admissibility and findings of fact and conclusions of law entered after the bench trial. The record indicates that the court improperly relied on his knowledge and skills as evidence of the identity of the perpetrator of the burglary, despite the articulated reason for the limited admission of the prior bad act evidence.

The written findings after the bench trial strongly suggest that the evidence was used for identity. At the conclusion of trial, the judge found "with Mr. Denham's specialized knowledge and his possession of the stolen property very shortly after the crime occurred, it is satisfied that circumstantial evidence establishes that Mr. Denham was the burglar." However, in its ruling on pretrial motions, the court expressly rejected the notion that the evidence of prior bad acts was admissible for purposes of establishing modus operandi or identity. Specifically the court said "I don't want to go into the facts of all the various prior cases as [a modus operandi], because I don't think we need that." As to the third step in the test for admissibility, the court did not engage in the analysis necessary to establish that the prior bad act evidence is relevant to an element of burglary in the second degree. Further, the crime does not require knowledge as an element and Denham did not dispute his skill set or raise the issue of intent in his defense against the charge. Both of these facts weigh against relevance. We need not reach the final step in the four-part analysis as our determination as to the third prong of the test is dispositive.

Since we find that the prior bad act evidence was improperly admitted, we must then determine whether it constitutes reversible error. Id. at 780. An error is not grounds for reversal unless it has been deemed prejudicial. Id. The test for

prejudice in this context is whether, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" State v. Gresham, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). In Denham's case, the improper admission of this evidence leads to a reasonable probability that it affected the outcome of his trial. It was the primary evidence that the court used to connect him to the burglary, as shown by the findings entered after trial. The error was not harmless.

III.     Failure to Object to the ER 404(b) Evidence on Specific Grounds

Denham next argues that his counsel was ineffective for failing to specifically object to the admission of the prior bad act evidence for knowledge. We disagree. Denham's defense counsel expressly argued against admission of the prior bad act evidence for purposes of proving modus operandi or proof of identity, because those were the primary bases for admission offered by the State. Later when the trial court issued its oral ruling, defense counsel asked for clarification as to the purpose for which the evidence was being admitted.

"Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d. 322, 335, 899 P.2d 1251 (1995). In a claim of ineffective assistance of counsel, the performance must have been deficient and the deficient performance must have resulted in prejudice. Strickland v. Wash., 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is considered deficient if "it [falls] below an objective standard of reasonableness based on the consideration of all the circumstances." McFarland,

127 Wn.2d. 334-35 (alterations in original). A showing of prejudice requires a reasonable probability that but for the deficient performance, the outcome of the proceeding would have been different. State v. Estes, 188 Wn.2d. 450, 458, 395 P.3d 1045 (2017).

Denham's counsel argued against the admission of the prior bad acts evidence both by filing a written motion and engaging in substantive oral argument. The defense was successful on a number of grounds; keeping the convictions themselves out and excluding the evidence as to modus operandi. Counsel did not object once the court clarified its ruling on admitting the prior admissions for knowledge, but this may have been a strategic decision.

Counsel was well aware that not only had the judge just reviewed over three hours of video and heard in-depth argument regarding admissibility, but also that the case was proceeding to a bench trial. This context suggests the decision by Denham's counsel was tactical as the court had repeatedly and emphatically articulated its ability to avoid improper utilization of the evidence for propensity. Further, counsel knew identity was the main defense to the burglary charge and may have felt that the court's assurance that the evidence would not be used to prove identity/modus operandi, which was key to the case, was sufficient to protect his client. Since we find that there was no deficient performance by Denham's counsel, we need not reach the second step of the Strickland test. 466 U.S. at 669. In light of the strong presumption of effectiveness and likelihood that the challenged conduct by defense counsel was strategic, Denham has failed to meet his burden of proof under Strickland.

IV.    Cumulative Error

Denham correctly argues that if this court finds error as to at least two of the issues he raises, cumulative error necessitates a new trial. When numerous evidentiary errors occur, a new trial may be required even if the errors construed individually were not sufficient for such a remedy. Coe, 101 Wn.2d at 789. When there is overwhelming evidence of the defendant's guilt, cumulative errors do not require reversal. In re Pers. Restraint of Cross, 180 Wn.2d 664, 691, 327 P.3d 660 (2014) (abrogated in part by State v. Gregory, 192 Wn.2d 1, 427 P.3d. 621 (2018)).

We find error as to both the issuance of the search warrant for Denham's cell phone data and records and the admission of the ER 404(b) evidence which was utilized for identity. We cannot conclude that overwhelming evidence of guilt existed for Denham absent these errors. State v. Mace established that mere possession of stolen property alone is insufficient to prove burglary. 97 Wn.2d 840, 842-43, 650 P.2d 217 (1982). Under Mace, Denham's possession of the high value diamond or other stolen jewelry and stones pursuant to sales transactions is insufficient to prove he committed the burglary. As such, in light of the evidence that existed at the time of trial, particularly as to the burglary charge, the errors rise to the level of necessitating a new trial for Denham.

Finally, Denham raises a number of additional challenges to his convictions in his SAG, including constitutional vagueness arguments as to the statutes under which he was convicted and selective prosecution. However, as we find cumulative error sufficient to warrant a new trial, we decline to reach those issues outlined in his SAG.

Reversed and remanded.

WE CONCUR: